In the waist and dress industry in Philadelphia collective bargaining agreements have resulted in industrial peace and the maintenance of harmonious relations between employers and employees for several years. The present case does not involve the determination of any substantive rights of the parties to such agreements. As the record is here presented the only question is in regard to the proper procedural method of effecting their enforcement.
Appellees, International Ladies' Garment Workers' Union and the Joint Board of Waist and Dress Makers' Union of Philadelphia, affiliated with the International Ladies' Garment Workers' Union, representing employees in the needlework trade, entered into a written agreement *Page 387 
on February 2, 1937, with Philadelphia Waist and Dress Manufacturers' Association, an organization of employers engaged in the manufacture of blouses, waists, dresses and other women's apparel in Philadelphia. In making this contract, the Association acted on behalf of its members. Appellant partnership, Goldstein Levin, operating a factory in Philadelphia for the manufacture of silk dresses, was, and still is, such a member, and, by the terms of the by-laws of the Association, would be bound by this contract in the absence of any agreement or understanding between themselves and appellees to the contrary. The contract, which aimed to stabilize conditions in the industry and was to be in force for three years, made provision against lockouts and strikes, and contained a covenant that "No member of the Association shall move his factory or factories outside of the City of Philadelphia during the life of this agreement." All complaints, disputes and grievances between the parties involving questions of interpretation or application of any clause of the agreement, or relation between the parties and their respective members, were, if the representatives of the Union and the Association failed to agree, to be submitted to an impartial chairman named in the agreement, and his decision was to be binding.
It is the contention of appellees that on or about July 4, 1937, Goldstein Levin moved their factory from Philadelphia to Johnstown and began manufacturing there the same kind of dresses they had been making at their Philadelphia plant. If appellants were parties to the contract in question, and if they violated it, appellees undoubtedly could have compelled a common-law arbitration under the terms of the agreement, and, if the award made called for injunctive relief, could have enforced it by appropriate proceedings in equity. "The law is definitely settled that where parties to an executory contract agree that all disputes, arising in relation thereto, shall be first submitted to the arbitrament of *Page 388 
one or more named persons, they are bound by the terms of submission . . .": Gowen v. Pierson, 166 Pa. 258, 264; Bashfordv. West Miami Land Co., 295 Pa. 560, 568. Instead of proceeding on the basis of common-law arbitration, however, appellees invoked the Pennsylvania Arbitration Act of April 25, 1927, P. L. 381, which unfortunately, as will hereinafter be pointed out, is not broad enough in its scope, and apparently was not designed, to cover arbitration proceedings where the remedy sought and awarded is a mandatory decree. Moreover, even had the act been available, one of its most important provisions was disregarded in these proceedings.
Appellees presented their complaint to the impartial chairman, who found that Goldstein Levin had moved their factory from Philadelphia, as charged by appellees, and made an award directing them (a) to reinstall within one week thereafter the machinery removed from their Philadelphia plant; (b) to reëmploy the workers formerly employed at the Philadelphia plant; and (c) to continue to be bound by the agreement between the Union and the Association for the duration thereof. Appellees then filed a petition in the court below, under the Act of 1927, for confirmation of this award. Appellants, on the other hand, filed a petition alleging that they were not parties to the contract between the Union and the Association, but had entered into a special written agreement of their own with the Union on September 4, 1936, which did not provide for any general arbitration by the impartial chairman, and had expired by its terms on June 30, 1937; that it was understood and agreed between them and the Union when the February agreement was made that it was not to apply to them; that they had not in fact moved their factory from Philadelphia to Johnstown but had operated the plant at Johnstown for the manufacture of cotton dresses since October, 1936, this plant being conducted under an agreement made with the Union on April 10, 1937; that their *Page 389 
business in Philadelphia had been extremely unprofitable and they had discontinued it entirely. They petitioned that the award of the arbitrator be vacated.
Hearings upon the petitions to confirm the award and to vacate it were conducted by the court, but, finding that the testimony before the arbitrator had not been given under oath, as required by the Act of 1927, the court referred the case back to the arbitrator for a hearing de novo. Accordingly the arbitrator held another hearing, at which Goldstein Levin appeared specially by counsel to object to the arbitrator's jurisdiction, and requested him to refer to the court for determination the factual issue as to whether they were bound by the contract of February 2, 1937, between the Union and the Association. The arbitrator refused to do this. He made a finding that Goldstein Levin were parties to that contract, and therefore subject to his authority; on the merits of the case he confirmed his previous award. Appellees again filed a petition praying confirmation of this award, while appellants filed a petition requesting the court to hear and determine preliminarily the issue as to the February agreement. The court held a hearing on these two petitions, together with the former petition of appellants to vacate the award, and handed down an opinion holding that the court was concluded by all the findings of the arbitrator, both that Goldstein Levin had moved their plant from Philadelphia to Johnstown and that they were bound by the February contract containing the arbitration provision. As to the question of the removal of the factory, the ruling of the court was clearly right. An arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, and his award will not be reviewed or set aside for mistake in either; otherwise arbitration proceedings, instead of facilitating the settlement of controversies, would serve but to delay the final determination of the rights of the parties: Pierce Steel PileCorporation v. Flannery, 319 Pa. 332, 339. *Page 390 
But as to the question whether appellants were parties to the February agreement, the ruling of the court was just as clearly wrong. The court struck out all the testimony in regard thereto, and in its opinion said: "The question involved [as to the contract] was one of fact, and the decision of theArbitrator thereof cannot be reviewed by us. . . . We have no power to reverse the findings of the Arbitrator on questions of fact except for actual fraud, deception or a mistake which is not merely one of judgment. . . . It is clear that this Employer's case rests upon the single question of fact whether it was a party to and bound by the agreement between the Union and the Association. We have examined the testimony presented before the Arbitrator and although there was a conflict of evidence upon this point, there was ample to support his finding and our power to set aside his award only arises whenit is unsupported by any testimony whatsoever, or was induced by fraud. It was not contended that the action of the Arbitrator was fraudulent or that he was imposed upon by fraud,and his finding therefore is binding upon all parties." Accordingly the court entered a decree dismissing appellants' petition to hear and determine the question whether they were bound by the contract of February 2, 1937, and also their petition to vacate the arbitrator's award, granting the petition of appellees to confirm the award, and entering judgment upon the award "in accordance with the terms thereof."
Even assuming for the moment that the Arbitration Act of 1927 was applicable to the controversy, the proceedings were fatally defective because of the refusal of the court itself to determine the initial question as to whether appellants were parties to the arbitration agreement. The Act of 1927, under which appellees proceeded, provides, in section 3, that if one of the parties refuses to perform under a written agreement for arbitration, the other party may petition the court for an order to show cause why such arbitration should not proceed *Page 391 
in the manner provided for in the agreement, and the court shall thereupon hear and determine the matter, and, "upon being satisfied that the making of the agreement for arbitration . . . is not at issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement . . . be at issue, the court shall proceed summarily to the trialthereof. If a jury trial be waived by the parties, the courtshall hear and determine such issue, or, if a jury trial be not waived, the court shall direct that a jury trial of such issue shall be had at the earliest possible date. If the jury, or the court if a jury trial be waived, find that no agreement in writing for arbitration was made, . . . the proceeding shall be dismissed. If the jury, or the court, if a jury trial be waived, find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." Referring to this provision, Mr. Justice MAXEY said, in Katakura Co., Ltd., v. Vogue Silk Hosiery Co., 307 Pa. 544,549: "If the defendant by its answer raises an issue as to the making of the arbitration agreement pleaded by the plaintiff or as to the failure, neglect or refusal to perform the same, the court having jurisdiction shall proceed to the trial thereof, as provided in section 3 of the Arbitration Act. On these issues or any of them, the parties are entitled to a jury trial if it is not waived."
Appellants having raised the issue as to whether they were parties to the contract under which the arbitration was to be conducted, that question had to be preliminarily determined by the court (appellants having waived a jury trial), and the arbitrator could not, in contravention of the statute, determine his own status and jurisdiction by finding that appellants were bound by the contract under which he purported to act. It *Page 392 
may be, of course, wholly untrue that, as contended by appellants, there was an agreement or understanding with the Union that appellants were not to be bound by the contract of February 2, 1937, but only by that of September 4, 1936 (which appellees assert was intended to cover merely the adjustment of a particular dispute then pending), but appellants not only had a right under the statute but even a constitutional right to have that issue determined by a judicial tribunal. It was said by CARDOZO, C. J., in Finsilver, Still Moss, Inc., v.Goldberg, Maas Co., Inc., 253 N.Y. 382, 389: "Arbitration presupposes the existence of a contract to arbitrate. If a party to a controversy denies the existence of the contract and with it the jurisdiction of the irregular tribunal, the regular courts of justice must be open to him at some stage for the determination of the issue. The right to such a determination, either at the beginning or at the end of the arbitration or in resistance to an attempted enforcement of the award, is assured by the Constitution as part of its assurance of due process of law."[1] Instead, therefore, of refusing to hear testimony on this issue and holding itself bound by the findings of the arbitrator in regard thereto, the court was obliged to consider the testimony and determine this question before an award could be made by the arbitrator or enforced by the court. *Page 393 
Apart from the fatal failure to observe the provision of the Arbitration Act of 1927 in this respect, the fact is, as already indicated, that that act is not adaptable to controversies in which the relief sought is in the nature of a mandatory decree. The act provides, section 14, that "The arbitration shall be docketed in the prothonotary's office as if it were an action at law in the prothonotary's office, with the moving party as plaintiff and the other parties as defendant or defendants. The judgment so entered shall have the same force and effect, in all respects as, and be subject to, all the provisions of law relating to a judgment in an actionat law, and it may be enforced as such in accordance with existing law."
Arbitration acts almost identical with that in Pennsylvania, or at least closely similar thereto, exist in practically all of the states, but, so far as research discloses, only in the Pennsylvania and Rhode Island statutes are the words "at law"
added as a limitation to the effect of a judgment confirming the arbitrator's award;[2] in most of the acts provision is made that awards shall have the effect not only of judgments in actions at law, but also of decrees in equity or orders in any form of action whatever.[3] For some reason which may have seemed wise to the legislature, our statute was limited in the manner pointed out, and unless and until it is amended there does not exist in Pennsylvania any statutory provision for the enforcement of arbitration awards other than those which could be made the subject of judgments *Page 394 
in actions at law. At the risk of repetition, however, attention is again directed to the fact that the enforcement of arbitration clauses in collective bargaining agreements, and of awards made thereunder, are not dependent upon any Act of Assembly. The Arbitration Act of 1927 did not displace old-time arbitration under the common law: Isaac v. Donegal ConoyMutual Fire Insurance Co., 301 Pa. 351, 357, 358. In a proceeding by bill in equity the court can determine whether appellants were parties to the agreement between the Union and the Association containing the provision for arbitration, and can specifically enforce any award that the arbitrator may make thereunder[4] to the extent to which it could compel specific performance had the award been contractually agreed upon by the parties themselves. If, as contended by appellants, it cannot decree that they must move their plant back to Philadelphia and there, over a given number of years, continue their capital investment, hire a certain number of employees, and carry on their business operations irrespective of the losses they may suffer thereby, it has at least the power, upon a proper showing, to enforce their obligation to the extent of a negative decree enjoining them from pursuing at any other place than Philadelphia the business which they conducted there when the agreement was entered into.
Order and judgment of the court below reversed, without prejudice to appellees as to other proceedings under the contract in controversy.
[1] In Palmer Pierce, Inc., v. Producers' MercantileCorporation, 186 N.Y. Supp. 369, and In re H. F. Gresham Co.,Ltd., 195 N.Y. Supp. 106, it was held that under the New York arbitration law, which in that respect was then similar to our own, either party was preliminarily entitled to a jury trial (unless waived) to determine whether there was an agreement for an arbitration of differences under the alleged contract. InFarulla v. Freundlich, 274 N.Y. Supp. 70, 279 N.Y. Supp. 228, relied upon by appellees, the court heard testimony and itself decided the question as to whether the parties were bound by the contract. In Dubinsky v. Blue Dale Dress Co., 292 N.Y. Supp. 898, also invoked by appellees, no question was raised as to the existence of the arbitration agreement.
[2] In the New York act the judgment on the award has "the same force and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action." New York Civil Practice Act, section 1463 (now section 1466 under the amendatory act of May 17, 1937, Laws of 1937, ch. 341). It is for this reason that the New York cases relied upon by appellees are not apposite to the present proceedings.
[3] The statutes in some states, however, such as Delaware, Iowa, Nebraska and Oregon, provide that the judgment "shall have the same force and effect as the verdict of a jury."
[4] Appellants must, of course, have the opportunity to present to the arbitrator their evidence on the merits of the controversy, which they forbore exercising in this case because of their contention that he was without any authority to arbitrate, and because appellees were proceeding under the Arbitration Act of 1927, which required that question to be decided in limine by the court. *Page 395