Opinion ry
 

 Reno, J.,
 

 Arbitrators selected under a written collective bargaining agreement between The Westinghouse Air Brake Company, hereafter called Westinghouse, and United Electrical, Radio and Machine Workers of America, Local No. 610, hereafter called the Union, found for the latter. Contending only that “the arbitrators exceeded their powers”, within the meaning of the Act of April 25, 1927, P. L. 381, §10 (d), 5 PS §170, Westinghouse obtained a rule to show cause why the award should not be vacated. After argument the court below discharged the rule, and Westinghouse appealed.
 

 The agreement provides for submission of grievances to arbitrators and the method of their selection. A sec
 
 *93
 
 tion defines grievances: “A grievance is defined to be any question or controversy between the Company and one (1) or more employees or the Union as to the
 
 application, interpretation
 
 or violation of the terms of this Agreement, or any matter involving
 
 wages, hours or working conditions not specifically covered by this
 
 Agreement(Emphasis added.) It provides that a decision of two of three arbitrators shall be the decision of the board, and: “The decision of the Board shall be final and binding upon both parties.” There is also a provision: “The Board of Arbitration shall not have the right to in any way alter, amend or enlarge the terms of this Agreement.”
 

 The grievance submitted to the arbitrators related to and called for an interpretation of Section 1 of Article II of the agreement: “The normal work-week shall be forty (10) hours, consisting of five (5) eight-hour days, Monday to Friday, inclusive, except where continuous operation requires otherwise. Nothing contained in this Section shall be interpreted to limit the right of the Company to schedule more or less than normal working time.” Two other sections of the agreement are
 
 also
 
 pertinent. Article I, Section 6 provides: “Management of the plant and direction of the working forces are vested in the Company. The exercise of such rights by the Company shall include but not be limited to the right to hire, assign and schedule the work, . . . provided that no action so taken shall be in violation of any other provisions of this agreement.” Article IY, Section 2, “Overtime at the rate of time-and-one-half shall also be paid for all hours worked between 7:15 a.m. Saturday and 7:15 a.m. Sunday.”
 

 The Union’s written grievance charged that Westinghouse violated Section 1 of Article II: “By laying men off a day or more in their normal scheduled work week (Monday through Friday) when they had work available.” The arbitrators, with the one selected by Westings
 
 *94
 
 house dissenting, found as a fact: “On or about the middle of September the Company began to lay off certain electricians for different days during the Monday to Friday work-week and ordered them to report for work on the following Saturday.” Concerning this there seems to be no dispute, for Westinghouse in its brief says: “The employer directed . . . employees ... to lay off one week day and to work on the following Saturday.” With that fact established, although the decision is not for us, there would appear to be some substantial basis for the contention that Westinghouse actually scheduled a work-week other than the normal work-week provided by the agreement for some of its employes.
 

 In an opinion of considerable length the majority arbitrators found the facts, analyzed the contentions of both parties, and interpreted the controverted section. They held: “Insofar as Article II relates to the instant case in which there has been no establishment of compelling operating necessity for deviating from its normal work-week prescription, it requires that when 40 hours of work are available, they shall be scheduled by the Company in 8 hour days, Monday to Friday inclusive. Article II does not require that 40 hours of work per week be made available. It does not prohibit the Company’s providing more than 40 hours of work per week and where more than 40 hours of work per week are provided, it does not by its terms even limit the Company’s choice as to whether the hours above 40 shall be made available outside the Monday to Friday normal work-week or as extra hours within the days of that normal work-week.”
 

 Continuing their interpretation, the majority said: “Article II is thus not a guarantee of a minimum or maximum work-week. It is however a guarantee for the employees that the ‘first’ 40 hours of work made available in any week shall be scheduled for performance in
 
 *95
 
 units of 8 hours on each of the five days from Monday to Friday, inclusive. The only possible exception would be in a case of compelling operating need. Whether there can be even this exception under the terms of the contract and if there can be, how extreme the need must be, are matters not here at issue.”
 

 The arbitrators concluded that each employe involved in the proceeding was “entitled to be paid for the number of 8 hour days ... on which the Company broke his work-week, in violation of Section [Article] II.” According to a stipulation, filed by counsel in the court below to enable it to prepare the certificate of the amount in controversy, the total amount of the award was $411.68. However, it appears that not all of the aggrieved employes’ claims were presented to the arbitrators and that they will be determined by the eventual result of this litigation.
 

 The arbitrators’ award is assailed by Westinghouse as a violation of the provision that they “shall not have the right to in any way alter, amend or enlarge the terms of the Agreement.” The word “guarantee”, as employed in the opinion is especially objectionable; and its use, Westinghouse argues, adds a new term to the agreement and, to that extent, constitutes an amendment and enlargement of its terms. Upon this is based the contention that “the arbitrators exceeded their powers.” It may be conceded arguendo that even without the quoted clause the arbitrators would not have been authorized to rewrite the agreement.
 

 The Westinghouse position is neither tenable nor new. The arbitrators were expressly authorized to interpret the agreement. The object of interpretation is to discover meaning. Determination by a competent tribunal of a meaning which one party has not previously discerned or thereafter will not concede does not demonstrate abuse of the interpretative process or that the
 
 *96
 
 tribunal lias altered, enlarged, reformed or rewritten tbe instrument.
 

 A similar argument was rejected in a leading case,
 
 Kingston Coal Co. v. Glen Alden Coal Co.,
 
 312 Pa. 516, 553, 168 A. 677. There the appellant also asserted “that the arbitrator exceeded his jurisdiction [powers] by reforming and rewriting the contract in awarding plaintiff [appellee] prices higher than those designated in the instrument itself.” The contract provided that appellant should pay appellee “the same prices ... as the Railroad Company obtains from the sale of its coal at its breakers.” The arbitrator decided that the quoted stipulation
 
 meant
 
 “current market prices.” This finding was based upon evidence taken by the arbitrator,
 
 [1]
 
 and a study of all the terms of the contract. By applying principles of interpretation the arbitrator discovered in the agreement a meaning which the appellant had not previously attributed to it and which it persistently contested. Nevertheless the Supreme Court held: “. . . we are not at liberty to contradict it [the arbitrator’s decision], even if we felt so inclined, since the parties have agreed that the decision of the arbitrator shall be final and binding.”
 

 The Court quoted and followed the statement of the controlling principle laid down in
 
 P. O. S. of A. Hall Assn. v. Hartford Fire Ins. Co.,
 
 305 Pa. 107, 116, 117, 157 A. 259: “The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators
 
 *97
 
 are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally.”
 

 The excerpt states the settled law of Pennsylvania, and governs this case.
 
 Rosenbaum v. Drucker,
 
 346 Pa. 434, 31 A. 2d 117;
 
 Goldstein v. International Garment Workers’ Union,
 
 328 Pa. 385, 196 A. 43;
 
 Pierce Steel Pile Corp. v. Flannery,
 
 319 Pa. 332, 179 A. 558;
 
 Britex Waste Co., Ltd., v. Nathan Schwab & Sons,
 
 139 Pa. Superior Ct. 474, 12 A. 2d 473. We may vacate an award only for the reasons stated in the Act of April 25, 1927, §10, supra, and the only reason assigned for vacating this award is not supported by the record.
 

 Order affirmed at appellant’s costs.
 

 [1]
 

 The testimony taken hy the arbitrators in the instant ease has not been printed. From statements in the opinion of the court below, the opinion of the arbitrators, and briefs of counsel we gather that the arbitrators held at least two hearings at which at least 211 pages of testimony were taken, and that the arbitrators considered facts relating to the history of the adoption of the section in dispute, “the actual practice of the parties from 1941 until the present time”, negotiations for the alteration of the terms of the agreement, and other relevant matters of fact.