Reading Tube Corporation, Appellant, *v.* Steel Workers Federation and Reading Tube Local.

Argued March 24, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*H. W. Stalberg,* with him *Harry Shapiro, Shapiro, Rosenfeld & Stalberg* and *Moss, Rieser & Bingaman,* for appellant.

*Darlington Hoopes,* for appellee.

OPINION BY WRIGHT., J., July 14, 1953:

This is an arbitration case. On December 21, 1950, the Reading Tube Corporation (hereinafter called the Company) posted a notice requiring all employes in

the casting shop to wear safety shoes after February 1, 1951. There was some opposition among the employes and, after negotiations, the effective date was postponed to March 1, 1951. On March 5, 1951, the Company posted a notice that, effective March 7, 1951, all casting shop employes who were not using safety shoes or who did not have them on order would be violating Company rules. A number of employes failed to comply with the notice. On the morning of March 7, 1951, the casting shop department foreman proceeded to issue violation slips to these employes. This action was immediately followed by a sit-down strike of casting shop employes, which lasted until a settlement regarding the violation slips was reached later the same day.

John Luckanish, the employe who was the subject of the present dispute, was Chairman of the Grievance Committee of the Reading Tube Local at the time. Prior to the strike he had informed the Company on various occasions that a number of the men were opposed to the safety shoe requirement. On March 7, 1951, when the foreman started to hand out the violation slips, Luckanish took the slips from him and tore them up. At the same time he told the foreman there would be a sit-down strike at the end of the shift that morning. Both before and after the strike deadline Luckanish informed certain Company officials and fellow union members that the sit-down strike would last until the violation slips were withdrawn. When the general foreman and plant superintendent came to the casting shop, Luckanish called the men over and asked them how they felt. He did not urge them to change their decision to strike, although he testified that he told them that they should not strike. Later, when the plant superintendent asked him to tell the employes to resume work, Luckanish refused. In accordance with

the grievance procedure of the existing labor agreement, Luckanish referred the matter of the strike to his superior Union officer, and went home. There is no evidence that he participated in the strike. The arbitrator found as a fact that this was the first instance in which the Company had penalized Luckanish since his employment in February, 1948, and that his record as an employe had been good.

In the afternoon of March 7, 1951, a meeting was held between the Company and the Union as a result of which the Union agreed to order the men back to work. Immediately thereafter, the Company issued a letter to Luckanish suspending him for five days for taking the violation slips, tearing them up and sponsoring an illegal strike (although the Company offered to revoke its suspension if the Union would remove him from office or offer some program of punishment). On March 12, 1951, the suspension was converted into a discharge. On March 13, 1951, the Steel Workers Federation requested arbitration in accordance with Article X of the agreement between the parties. A hearing was held on April 17, 1951, before the arbitrator, and on May 25, 1951, he made the following award: "The Union's request is granted in part. The Company's discharge of John Luckanish is modified to suspension for three weeks from March 7, 1951 through March 27, 1951, with the understanding that he will be reinstated as of March 28, 1951 with compensation in full for all wages lost since the latter date by reason of his discharge". The Company thereupon filed a petition in the lower court asking that the arbitrator's award be corrected and modified. From a decree confirming the award, the Company has taken this appeal.

Primarily, the appellant bases its position on section 11(d) of the Arbitration Act of 1927 (April 25,

P. L. 381, 5 P.S. §171). This section provides that the court shall make an order modifying or correcting the award "Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict". Appellant contends that the existence of "just cause" for the discharge of an employe is a question of law; and that since the arbitrator found that the actions of the employe in this case prolonged an unlawful strike in violation of the terms of the collective bargaining agreement, it is tantamount to a finding that "just cause" existed for his discharge. It is therefore urged that the arbitrator committed a mistake of law and that his award should be modified and corrected by the court.

Appellant's argument assumes that the instant proceeding is governed by the Arbitration Act of 1927. This proposition is not challenged by appellee, and we need not decide it. By its terms, the Act provides for the settlement by arbitration of provisions in written contracts, "except a contract for personal services": Act of April 25, 1927, P. L. 381, §1, 5 P.S. §161. This exact point has never been the subject of appellate review. However, our lower courts have held that collective bargaining agreements are contracts for personal services which fall within the exception to the Act: *Retail Cigar, Drug and Luncheonette Employees Union, Local 1034, etc., v. Sun Ray Drug Co.,* 67 D. & C. 512; *Greyhound v. Assoc. Motor Coach Employees,* 97 P.L.J. 47; see *Mack Mfg. Corp. v. International Union, etc.,* 368 Pa. 37, 81 A. 2d 562; *Pennsylvania Greyhound Lines v. Amalgamated Assn.,* 105 F. Supp. 537. Contra, *Kaplan et al. v. Bagrier et al.,* 12 D. & C. 693. In *Goldstein et al., v. International Ladies' Garment Workers' Union,* 328 Pa. 385, 196 A. 43, Justice STERN said (p. 394): ". . . the enforcement of arbitration

clauses in collective bargaining agreements, and of awards made thereunder, are not dependent upon any Act of Assembly".

It should be noted that the Arbitration Act of 1927 did not displace arbitration under the common law: *Isaac et al. v. D. & C. Mut. F. Ins. Co.,* 301 Pa. 351, 152 A. 95; *Goldstein et al., v. International Ladies' Garment Workers' Union,* 328 Pa. 385, 196 A. 43; *Philadelphia Housing Authority v. Turner Const. Co.,* 343 Pa. 512, 23 A. 2d 426; *Rosenbaum et al., v. Drucker et al.,* 346 Pa. 434, 31 A. 2d 117. Under the common law rules governing arbitration, an award of arbitrators is conclusive. The general rule is that the award is binding unless it can be shown by clear, precise and indubitable evidence that the parties were not given a hearing, or that there was fraud, misconduct, corruption or some other irregularity on the part of the arbitrators which caused them to render an unjust, inequitable, and unconscionable award. Unless they are restricted by the submission, the arbitrators are the final judges of both law and fact and their award will not be disturbed for a mistake of either; *Goldstein et al., v. International Ladies' Garment Workers' Union,* 328 Pa. 385, 196 A. 43; *Philadelphia Housing Authority v. Turner Const. Co.,* 343 Pa. 512, 23 A. 2d 426; *McDevitt v. McDevitt,* 365 Pa. 18, 73 A. 2d 394; *Electric Power Const. Co. v. Allen, Lane & Scott, Inc.,* 367 Pa. 319, 80 A. 2d 799; *Mack Mfg. Corp. v. International Union, etc.,* 368 Pa. 37, 81 A. 2d 562; see 11 Standard Pennsylvania Practice pp. 486, 504.

The applicable principles are well summed up in *P. O. S. of A. Hall Assn. v. Hartford Fire Ins. Co.,* 305 Pa. 107, 157 A. 259, where Mr. Justice SCHAFFER said (p. 116) : " 'The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and

an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally' ". See also *Kingston Coal Co. v. Glen Alden Coal Co.,* 312 Pa. 546, 168 A. 677.

The parties here submitted their dispute to arbitration under Step Four, Section 3, Article X of their Agreement. Paragraph G thereof provides that "The decision of an Arbitration (sic) on any matter which shall have been submitted in accordance with the provisions of this Agreement shall be final and binding upon the Company and the Union". Under the common law rule, as well as by the language of the Agreement, the parties are bound by the award. "This finding was made after consideration of all evidence submitted at the hearing, and we are not at liberty to contradict it, even if we felt so inclined, since the parties have agreed that the decision of the arbitrator shall be final and binding": *Kingston Coal v. Glen Alden Coal Co.,* supra.

If we assume that the provisions of the Arbitration Act of 1927 apply to this contract (see *J. M. Davis Co. v. Shaler Twp.,* 332 Pa. 134, 2 A. 2d 708) we reach a similar result. Appellant argues that the existence of "just cause" for discharge is a question of law. Under section 11(d) of the Arbitration Act of 1927 the award may be modified or corrected where it is against the law and is such that had it been a jury verdict a different or other judgment would have been entered notwithstanding the verdict. The award is placed on the same footing as the verdict of a jury, and mistakes of law in an award may be rectified on appeal: *Philadelphia Housing Authority v. Turner Const. Co.,* 343 Pa.

512, 23 A. 2d 426; *Navarro Corporation v. Pittsburgh School Dist.*, 344 Pa. 429, 25 A. 2d 808; *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139; *McDevitt v. McDevitt,* 365 Pa. 18, 73 A. 2d 394. However, arbitration agreements are to be strictly construed, and every inference of fact should be drawn in favor of the contestant having the award: *J. S. Cornell & Son, Inc., v. Rosenwald,* 339 Pa. 18, 13 A. 2d 716; *Margolies v. Zimmerman, et al.,* 341 Pa. 493, 19 A. 2d 737; *Electric Power Const. Co. v. Allen, Lane & Scott, Inc.,* 367 Pa. 319, 80 A. 2d 799.

In support of its contention appellant relies on the single fact found by the arbitrator that Luckanish "failed to do everything that could reasonably be expected of a Union official to get the men back to work" and did not "specifically urge the men to return even though officials of the Company directly requested him to do so. In fact, if anything, his statements and actions served to prolong the strike". But this contention assumes justification for the discharge, and that is the very question in dispute which was submitted to the arbitrator. In this regard we approve the following language of President Judge MAYS of the lower court:

"Unquestionably, there is some testimony which supports the charges made by the company and which, if the arbitrator had relied thereon, would have well justified a finding that he, Luckanish, should have been discharged. The record, however, discloses that there is evidence which is unfavorable to the company's contention which was relied upon by the arbitrator and was the basis of his finding that there should be merely suspension and not a full and complete discharge.

"What the arbitrator has done is supported by competent evidence and his findings and award are not contrary to law nor to the terms of the agreement. This

being so the court is without authority to grant the prayer of the petition and change the award to read that Luckanish should have been discharged instead of suspended. It will serve no useful purpose for us to review all of this testimony. It is sufficient to say that there is evidence to support the finding of the arbitrator and since he concluded that Luckanish was not guilty of the more serious offense but found him guilty of the lesser one, he, the arbitrator, not only had a right but there was imposed upon him a duty, to make the penalty commensurate with what was his, Luckanish's, wrongdoing.

"The arbitrator's words in the closing part of his report, clearly give his reason for changing the punishment. Since some corrective action was necessary, whether it be suspension or discharge depends upon facts and the judgment of the one who primarily is to find these facts and pronounce judgment thereon. The arbitrator is that person".

In *Bernstein v. Lipper Manufacturing Co.*, 307 Pa. 36, 160 A. 770, Mr. Justice KEPHART said, p. 40: "What constitutes a sufficient cause for the discharge of a servant is a question of law, and where the facts are undisputed or admitted it is for the court, *but where the evidence to sustain the justification for discharge is disputed, the jury must pass on it . . . . .*" (Italics supplied). This court previously laid down the same rule in *O'Neil v. Schneller*, 63 Pa. Superior Ct. 196. In the case at bar the disputed question was whether the evidence justified discharge or suspension.

We deem it unnecessary to review the record as to the many charges and countercharges which were passed upon by the arbitrator. Suffice it to say that facts were presented on behalf of both parties, and we feel that it was within the province of the arbitrator to pass upon them with finality. As was said in *Elec-*

*tric Power Const. Co. v. Allen, Lane & Scott, Inc.*, 367 Pa. 319, 80 A. 2d 799, "The arbitrators made an award based on a conclusion amply supported by evidence. From such an award there is no appeal to the courts. Monongahela Navigation Company v. Fenlon, 4 W. & S. 205; Jonathan Clark & Sons Company v. Pittsburgh, 217 Pa. 46, 66 A. 154; Jackson v. McKeesport, 305 Pa. 198, 157 A. 472". And see *Westinghouse Air Brake Company Appeal,* 166 Pa. Superior Ct. 91, 70 A. 2d 681.

The appellant has also argued that the arbitrator exceeded his powers when he changed the penalty of discharge "authorized under the terms of the contract" and substituted his judgment of what the punishment should be for that agreed upon in the contract. Article II, Section 2, of the Agreement is quoted to the effect that ". . . . . the right to hire, suspend or discharge for just cause . . . . . is vested exclusively in the Company". Article IX, A, is then quoted as follows:

"A. In the exercise of its rights as set forth in Article II, the Company agrees that an employee shall not be peremptorily discharged from and after the date hereof, but that in all instances in which the Company may conclude that an employee's conduct may justify discharge, he shall be first suspended. Such initial suspension shall be for not more than five (5) working days. During this period of initial suspension, the Union may request a hearing in Step Three and a statement of offense. After such hearing the Company will decide whether the suspension shall stand, be extended, revoked or converted into discharge. If no such hearing is requested within the said five (5) days period the suspension or subsequent discharge shall be deemed proper".

Appellant urges that by virtue of this provision the parties granted to the Company the exercise of judg-

ment, and did not give such discretion to the arbitrator. Further, appellant contends that Article X of the Agreement limits the authority to pass on such questions by virtue of the following provisions:

"E. The Arbitrator shall have only jurisdiction and authority to interpret, apply or determine compliance with the provisions contained in this Agreement or any written amendment thereto.

"F. The Arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way, the provisions of this Agreement or any written amendment thereto."

The defect in this argument is the failure to consider the language of Article IX, C, which provides:

"C. In the event a decision results in either confirmation, or extension of the suspension or discharge of the employee, or if no agreement is reached on compensation for time lost in the event of revocation of the suspension or discharge, the Union may present, within five (5) working days from the date of receipt of the Companys decision, in writing, a grievance which shall be handled in accordance with the grievance procedure of this Agreement under Step Four . . . . ."

The entire contract must be construed in the light of the facts and circumstances under which the parties contracted, so that every part will be given effect when that is possible: *Bank of East Conemaugh v. Davies et al.*, 315 Pa. 59, 172 A. 296. If the Company was to have complete discretion and its decision was to be final, procedure for adjusting grievances would serve no purpose and Paragraph C of Article IX would be without meaning. By embodying this provision in the Agreement, the parties specifically provided that decisions of the Company in suspending or discharging employees should be the subject of arbitration.

Our conclusion is that the determination of the respective rights of the Company and the employe in this case was properly a matter for the arbitrator. His findings are fully supported by the testimony and the award is in conformity with those findings. To agree with the Company's contention would be to seriously impair the usefulness of arbitration in labor cases.

Judgment affirmed.