## International Ladies' Garment Workers' Union, A. F. of L., et al., v. Nazareth Mills Company

*John O'Brien* and *Sidney G. Handler*, for plaintiffs.
*Smith, Paff, Van Sickle & Fishbone*, for defendant.

BARTHOLD, P. J., January 11, 1954.—This is a petition filed by plaintiff union pursuant to the provisions of the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §§161 et seq., requesting the court to "order defendant (company) to proceed to arbitration" and "appoint an impartial arbitrator who shall act under the collective bargaining contracts in force between the parties."

Plaintiff's action is based upon the written collective bargaining agreement which provides for the arbitra-

tion of "grievances . . . between the Company and the Union or any employee in regard to wages, working conditions or other matters arising out of enforcement of this agreement or its interpretation."

The case was submitted to the court upon the pleadings and supplemental stipulations. No depositions were requested. The case was argued on December 1, 1953.

The union's petition contains the following factual averments: On December 11, 1950, the parties entered into a written collective bargaining agreement governing rates of pay, wages, hours of work, and other conditions of employment, for the period beginning December 11, 1950, and ending December 11, 1952. The agreement was reopened for the purpose of adjusting wages to meet increased cost of living, and a supplemental written agreement thus adjusting wages was concluded, effective December 11, 1951, for the period ending December 11, 1952. Defendant company had paid its employes annually for a period of upward of 28 years a Christmas bonus based upon their length of service. The original collective bargaining agreement and its supplement made no mention of a Christmas bonus. On November 14, 1951, the company, by posting a notice in its plant, notified its employes that Christmas bonus payments would be discontinued. On December 10, 1951, the union notified the company by letter that such action could be taken only upon mutual agreement of the parties. The company met with the union and discussed the grievance. On January 17, 1952, the company, after it had obtained the union's signature to the supplemental agreement, notified the union that it would not pay a Christmas bonus. On January 29, 1952, the union informed the company by letter that the matter constituted a dispute under the collective bargaining agreement and stated that the only solution was arbitration in accordance with the

agreement. The company replied on February 5, 1952, stating that, "The agreement . . . does not provide for the payment of a bonus," that "there is no obligation on the part of the company to pay a bonus," hence "there is no question to be referred to an arbitrator." On February 18, 1952, the union by letter renewed its request that the parties agree upon an arbitrator, submitted a list of names from which an arbitrator might be selected and suggested that if the parties could not agree it would be necessary for the Pennsylvania Department of Labor and Industry to appoint an arbitrator. The company replied on March 3, 1952, reiterating its contention that there was no question for reference to an arbitrator. On March 6, 1952, the union requested the Department of Labor and Industry to designate an impartial arbitrator. On March 27, 1952, the department answered the request by stating that the company objected to arbitration on the ground that the point in dispute was not arbitrable. Confronted with this situation, the union then filed the within petition.

The company filed an answer admitting the execution of the collective bargaining agreements and the payment of a Christmas bonus to its employes annually from the year 1933 to the year 1950. The company, under the heading of "New Matter", denied the legal sufficiency of the petition on three grounds: (1) "The parties have not made an agreement for arbitration of the matter involved"; (2) "the plaintiffs have waived any right to arbitrate the matter and are estopped to demand such arbitration by entering into an agreement [the supplemental agreement] dated December 1, 1951"; (3) "plaintiffs have not followed the procedure set forth in the collective bargaining agreement dated December 11, 1950" (the original collective bargaining agreement).

The union filed an answer to the "New Matter", averring that the Christmas bonus was an integral

part of the wages of the employes and was treated and considered as such by various acts of the company, namely, the deduction therefrom of withholding taxes and old age benefits (social security) taxes, the inclusion of the amounts thereof in the determination of the annual wage record of each employe for the determination of vacation pay, and averring further that the payment of a Christmas bonus, both prior and subsequent to any collective bargaining agreement with the union, was a working condition of the company's employes.

The court heard the case on the record as presented by the parties in the pleadings aforesaid and held that it could not determine whether an arbitrable question had been presented because the question or questions to be submitted to arbitration were insufficiently set forth in the petition. The court ordered the union to amend its petition "so as to indicate specifically the dispute or disputes to be arbitrated."

The union filed an amended petition, which incorporated all of the allegations in prior pleadings and added the following allegation specifying the particular dispute to be arbitrated:

"Did the defendant, Nazareth Mills Co., breach its obligation under the collective bargaining agreement with petitioner union by its failure and refusal to pay its employes on or about the middle of December 1951, the Christmas bonus which it had regularly and customarily paid its employes, at or about the same time of the year, annually for the preceding period of upward of 18 years, and which (like piece rates, health and welfare and death benefits) was not specifically detailed in any of the written collective bargaining agreements between the said defendant company and petitioner unions?"

Defendant company filed an answer to the amended petition, alleging that the agreement did not provide

for arbitration of the tendered dispute and that the amended petition did not comply with the court order. Defendant company later, without the consent of plaintiff union or leave of court, filed an amended answer in which it repeated the allegations already set forth in prior pleadings, and alleged for the first time "that the provisions of the Arbitration Act of 1927 were not applicable." The latter contention is based upon the language of the Arbitration Act of 1927, which excepts from its provisions contracts for personal services. This presents a jurisdictional question which may be raised at any time without consent of the parties or leave of court. All other allegations contained in the company's amended answer must be stricken from the record for failure to comply with Pa. R. C. P. 1033, which provides that:

"A party, either by filed consent of the adverse party or by leave of Court, may at any time change the form of action, correct the name of a party or amend his pleading."

The first question to be determined is whether the court has jurisdiction.

The Arbitration Act of 1927 provides for the settlement by arbitration of provisions in written contracts "except a contract for personal services": Act of April 25, 1927, P. L. 381, sec. 1, 5 PS §161. Accordingly, the company contends that employe-employer arbitration problems are not within the purview of the act. "This exact point has never been the subject of appellate review": Reading Tube Corporation v. Steel Workers Federation and Reading Tube Local, 173 Pa. Superior Ct. 274, 278; and our lower courts are in disagreement on the question.

In Kaplan et al. v. Bagrier et al., 12 D. & C. 693, C. P. No. 1, Phila. County, Kun, J., the court stated that the policy of the Pennsylvania courts was to favor arbitration and construe liberally statutes relating to

it, and held that the 1927 Act did apply to collective bargaining contracts. The court's opinion states that such contracts are not truly contracts for "personal services," that personal services implied a personal relation between employer and employe where one performed duties subject to the personal direction of the employer. This view was followed in Layne v. Phillips, etc., 67 D. & C. 40, C. P. No. 7, Phila. County. A contrary view was adopted in Retail Cigar, Drug and Luncheonette Employees Union, Local 1034, etc. v. Sun Ray Drug Co., 67 D. & C. 512, C. P. No. 5, Phila. County. The court declared (at page 515), that it was not in accord with Kaplan et al. v. Bagrier et al., and that "the collective bargaining agreement itself is a contract for personal services between a union representing its members and the employer of members of the union." See also Greyhound v. Associated Motor Coach Employees, 97 Pitts. L. J. 47.

While the appellate courts have not squarely decided this issue, there are several appellate court decisions involving proceedings under the Act of 1927 which intimate that the act does apply to labor arbitration. In Goldstein et al. v. International Ladies Garment Worker's Union et al., 328 Pa. 385, a case involving labor arbitration, the Supreme Court held that the Act of 1927 was not applicable where the remedy sought is in the nature of a mandatory decree, leaving the implication that it could apply where the remedy sought is not in the nature of a mandatory decree. The court's statement (p. 394) that, ". . . In a proceeding . . . in equity the court . . . can specifically enforce any award that the arbitrator may make thereunder," also indicates that the Act of 1927 could be used in labor arbitration.

In Grocery and Food Warehousemen Local Union No. 635 v. Kroger Co., 364 Pa. 195, the union proceeded against the employer for a rule to show cause

why the employer should not submit to arbitration. The court discharged the rule; and in answering the union's averment that the lower court had failed to proceed in accordance with the Act of 1927, stated that the question of procedure not having been raised earlier it was too late for the union to complain. This decision appears to indicate that an order could have been made compelling compliance with the Act of 1927, had the question been raised earlier. In Westinghouse Air Brake Company Appeal, 166 Pa. Superior Ct. 91, 97, a case involving arbitration of a collective bargaining agreement under the Act of 1927, the Superior Court held that an award could be vacated only for the reasons stated in the act, thereby intimating that the act would apply to labor arbitration.

It is our considered judgment that, if the relief sought is not in the nature of a mandatory injunction, the Arbitration Act of 1927 is applicable to labor arbitration. The cases which hold the contrary view are based on the erroneous assumption that collective bargaining agreements are contracts of employment. A collective bargaining agreement is not of itself a contract of employment. Ordinarily, collective bargaining agreements between employer and union outline the general conditions under which the business shall be conducted with respect to wages, hours of labor, working conditions and matters incidental thereto. The individual member of the union and his employer make their own contract impliedly, at least, if not expressly. This distinction is succinctly set forth by the Supreme Court of the United States in J. I. Case Co. v. National Labor Relations Board, 321 U. S. 332. Mr. Justice Jackson, speaking for the majority, said:

"Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and

work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. . . .

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. . . . This hiring may be by writing or by word of mouth or may be implied from conduct. . . . "

See also United Office & Professional Workers of America, CIO, v. Monumental Life Ins. Co., 88 F. Supp. 602 (E. D. Pa., 1950); Donahue v. Susquehanna Collieries Co., 138 F. 2d 3 (3rd cir., 1943); Watkins v. Hudson Coal Co., 151 F. 2d 311 (3rd cir., 1945); Shanferoke Coal & Supply Corporation v. West Chester Service Corporation, 70 F. 2d 297 (2d cir., 1934), affd. 293 U. S. 449. In this connection it is significant that defendant employer, in article 13 of the collective bargaining agreement, reserved to itself the exclusive right to hire and thus make the employment contracts.

Holding as we do, that the Arbitration Act of 1927 applies to labor agreements, there is left the question whether the tendered dispute is covered by the arbitration provisions of the collective bargaining agreement.

The dispute tendered for arbitration is whether defendant, Nazareth Mills Company, breached "its obligation under the collective bargaining agreement . . . by its failure and refusal to pay its employes . . ., the Christmas bonus which it had regularly and customarily paid . . ., at or about the same time of the year, annually for the preceding period of upward of 18 years."

Section 1 of the Arbitration Act of 1927, 5 PS §161, sets forth the controversies that may be arbitrated thereunder. This section ordains the validity, irrevocability and enforcibility of "a provision in any written

contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, . . ."

Section 2 of the Act, as amended, 5 PS §162, provides that:

"If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall, on application of one of the parties, . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, . . ."

Section 3 of the Act, 5 PS §163, delineates the procedure for determining arbitrable issues. It provides:

". . . If the making of the arbitration agreement, or the failure, neglect, or refusal to perform the same, be at issue, the court shall proceed summarily to the trial thereof. If a jury trial be waived by the parties, the court shall hear and determine such issue, or, if a jury trial be not waived, the court shall direct that a jury trial of such issue shall be had at the earliest possible date. If the jury, or the court, if a jury trial be waived, find that no agreement in writing for arbitration was made, or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury, or the court, if a jury trial be waived, find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

Under this section "it seems clear that 'the making' of an arbitration agreement may be put in issue and made subject to trial . . . not only (1), with respect to the validity of its original consummation, but also

(2) with respect to its coverage, namely, whether a given controversy is or is not within the intent of the agreement, and (3), with respect to its alteration, substitution, or rescission by express or implied agreement of the parties, or by its expiration under its own terms": Vol. 99, Univ. of Pa. L. R., p. 756, "Arbitration in Pennsylvania"; Goldstein et al. v. International Ladies Garment Workers' Union et al., 328 Pa. 385, 391; J. S. Cornell & Son, Inc., v. Rosenwald, 339 Pa. 18 (concurring opinion of Mr. Justice Stern) ; Stofflet & Tillotson v. Chester Housing Authority, 346 Pa. 574; Katakura & Co., Ltd., v. Vogue Silk Hosiery Co., 307 Pa. 544, 549.

In the instant case "the making" of the arbitration agreement with respect to the validity of its original consummation is not in dispute. The parties differ, however, as to whether the controversy is or is not within the intent of the agreement. A jury trial on this issue as well as all other issues raised has been waived by stipulation of record filed by the parties.

The basic question before the court is whether the tendered dispute is referable to arbitration under the provisions of the collective bargaining agreement. This is the court's only concern as the court is without authority to pass upon the merits of the controversy.

"It was not the intent of that Act that the Court ... should adjudicate the basic issues in dispute upon depositions. A determination of the controversy is the intended office of the arbitration approved by the statute": Wm. Linker Co., Inc., v. Feinberg et ux., 360 Pa. 601, 606; Mack Manufacturing Corporation v. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, 368 Pa. 37, 43.

In the case before us the collective bargaining agreement contains a provision whereby the parties agreed to submit to arbitration "grievances . . . in regard

to wages, working conditions or other matters arising out of the enforcement of this agreement *or its interpretation.*" (Italics supplied).

It also contains a provision that "the decision of the arbitrator . . . shall be final and binding."

"The law is definitely settled that where parties to an executory contract agree that all disputes, arising in relation thereto, shall be first submitted to the arbitrament of one or more named persons, they are bound by the terms of submission . . . :" Gowen v. Pierson, 166 Pa. 258, 264; Bashford v. West Miami Land Co., 295 Pa. 560, 568; Goldstein et al. v. International Ladies' Garment Workers' Union et al., 328 Pa. 385, 387, 388.

The parties in the case at bar agreed to submit to arbitration not only grievances in regard to wages and working conditions, but also disputes arising out of the interpretation of the agreement itself. In Mack Manufacturing Corp. v. International UAW, 368 Pa. 37, 42, it was held, under similar circumstances involving a comparable contract provision, that the interpretation of a labor contract was for the determination of the arbitrator. In Westinghouse Air Brake Co. Appeal, 166 Pa. Superior Ct. 91, supra, where the contract defined a "grievance" as a question or controversy "as to the *application, interpretation* or violation of the terms of this agreement," the court held that "the arbitrators were expressly authorized to interpret the agreement."

The union has pleaded facts indicating that the payment of an annual Christmas bonus has been an integral part of the compensation structure and a condition of employment applicable to the company's employes by a long established and continuous practice, custom or usage. The union contends that the parties having contracted on the subject-matter of wages and

conditions of employment, concerning which there were known usages or customs prevailing, incorporated such usages or customs by implication into their agreements, nothing having been said to the contrary: A. L. I. Restatement of the Law of Contracts, vol. 1, §§246, 247, pp. 345, 349.

The company contends that since the collective bargaining agreement is silent on the subject of Christmas bonus payments, the union, by attempting to read into the contract usage or custom, is in effect varying the terms of an unambiguous written contract. In support of the contention, the company relies upon the legal principle that, although a contract provides for arbitration of disputes concerning its application or interpretation, such a provision does not require arbitration if the agreement is unambiguous and there is no reasonable basis for interpretation claimed by the parties seeking arbitration. We agree with this principle but do not believe that it applies to the facts in the instant case. The union, under its theory of the case, is not attempting to alter, vary or rewrite the contract, but rather to establish all of its terms in light of the surrounding circumstances: Reading Tube Corporation v. Steel Workers Federation and Reading Tube Local 173 Pa. Superior Ct. 274, 284, supra. The company's contention overlooks the fact that custom or usage may, under some circumstances, become a part of the contract, in which case the admission of evidence of custom or usage is not dependent on the rule that parol evidence is inadmissible to vary a writing inconsistent therewith, but upon the ground that the law makes the custom or usage a part of the contract: Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181.

The fact that the company may disagree as to the effect of usage or custom on the collective bargaining agreement does not affect the right of the union to

have such matter reviewed by an arbtirator as expressly authorized by the collective bargaining agreement. As was stated in the Westinghouse Air Brake Company Appeal, 166 Pa. Superior Ct. 91, 95, 96, supra, "determination by a competent tribunal (i.e., the arbitrator) of a meaning which one party has not previously discerned or thereafter will not concede does not demonstrate abuse of interpretative process or that the tribunal has altered, enlarged, reformed or rewritten the instrument."

In view of the principles hereinabove set forth, we are firmly of opinion that the arbitration clause in the present case requires the parties to submit to arbitration matters which relate to wages and working conditions established by practice, custom and usage. These matters involve the interpretation of the agreement, and since the parties have specifically authorized arbitration with respect to the interpretation of their agreement, the arbitrators will be the final judges of both law and fact.

" 'The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally' ": Patriotic Order Sons of America Hall Association v. Hartford Fire Insurance Co., 305 Pa. 107, 116, 117. See also Rosenbaum et al. v. Drucker et al., 346 Pa. 434; Goldstein et al. v. Internationl Ladies' Garment Workers' Union et al., 328 Pa. 85, supra; Pierce Steel Pile Corporation v. Flannery, 319 Pa. 332; Britex Waste Company, Ltd., v. Nathan Schwab & Sons, Inc., 139 Pa. Superior Ct. 474.

Defendant company makes the following additional contentions: (1) That the union waived its right to arbitration by instituting an unfair labor practice proceeding under the National Labor Relations Act; (2) that the union further waived its right to arbitration by entering into the supplemental agreement dated December 11, 1951, and (3) that the union did not follow the grievance procedure set forth in the collective bargaining agreement. These contentions go to the merits of the controversy, and under well established legal principles must be left to the arbitrator for determination.

"It is for the arbitrator to determine not only the substantive rights of the parties, but compliance with the proper procedural steps as well, since the procedure is also fixed by the agreement and there is a dispute over the interpretation of the agreement": Mack Manufacturing Corporation v. International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, 368 Pa. 37, 43, supra.

We, therefore, hold that the provisions of the Arbitration Act of 1927 apply to the collective bargaining agreement before us and that the tendered dispute is referable to arbitration under the provisions of the agreement.

### Order

And now, January 11, 1954, it is ordered and directed that the parties proceed with arbitration in accordance with the terms of article 6(e) of their agreement. If either of the parties shall fail to avail themselves of the methods provided by the agreement for the appointment of an arbitrator, or if for any other reason there shall be a lapse in the naming of an arbitrator, then, upon the application of either party to the controversy, the court will designate and appoint an arbitrator in accordance with section 4 of the Act of April 25, 1927, P. L. 381, 5 PS §165.