Petition of **DOVER STEAMSHIP COMPANY, Inc., as owner of the American steamers, THE FLORA C. and THE LIBERTY F. and as agent for the owner of the American steamer THE LIBERTY BELL, for an order directing N. V. Rotterdamsche Kolen Centrale to proceed to arbitration.**

United States District Court
S. D. New York.
July 25, 1956.

Kirlin Campbell & Keating, New York City, for petitioner, Carl H. Watson, Jr., New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for N. V. Rotterdamsche Kolen Centrale, Charles S. Haight, New York City, of counsel.

HERLANDS, District Judge.

This motion by petitioner, Dover Steamship Company Inc., under United States Arbitration Act, §§ 4 and 5, 9 U.S.C.A. §§ 4 and 5, presents the question whether one of the parties to an arbitration agreement can move to disqualify the arbitrator designated by the other party *before* the arbitration proceedings get under way, on the ground that such arbitrator (1) lacked alleged residential requirements, (2) lacked allegedly necessary specialized knowledge and experience, and (3) was biased and partial because he had business connections with the party who designated him.

In form, the application is for an order directing that the arbitration of disputes, arising under certain charter parties, shall proceed in accordance with Clause 3 of said charter parties and that, if respondent should fail to appoint an arbitrator within five days after the entry of such an order, this Court shall designate an arbitrator to serve as if he had been appointed by respondent.

Involved are three consecutive voyage charter parties, made at New York between petitioner (as owner of the steamers The Flora C. and The Liberty F., under two charters; and as agent for the owner of the steamer The Liberty Bell, under the third charter) and the respondent, as charterer. It was agreed that the respondent-charterer would ship and the petitioner would carry, in said vessels or substitutes, a number of cargoes of coal from the United States to Europe. During the years 1952 and 1953, a total of twenty-eight voyages

were made under the three charter parties. Disputes have arisen with regard to the performance of the charter parties.

Each of the three charter parties contains an identical "Clause 3," which provides in part:

"If any dispute or difference should arise under this charter, same to be referred to three parties in the City of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or any two of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court."

Petitioner has made the present motion because he objects to respondent's appointment of one Morton J. Weinstein as respondent's arbitrator.

The specific grounds of objection are:

(1) that Weinstein is employed or otherwise associated with the Sherman Lawrence Advertising Co. as an account executive; that, in this capacity, his principal account has been and is American Anthracite and Bituminous Coal Corp.; that the latter company has acted as agent for respondent in executing the charter parties involved in this case; that said company is either wholly owned by respondent or is owned by the same interests which own respondent; and that Weinstein should be disqualified as an arbitrator because of "inherent bias or partiality that is obviously bound to arise from his business relationship with respondent";

(2) that Weinstein lacks training and experience in maritime matters and international trade and is, therefore, not qualified to pass on the complex questions of maritime contract and international trade involved in the instant disputes;

(3) that Weinstein neither resides nor does business in the City of New York and, therefore, fails to comply with the requirements of clause 3 of the charter parties.

Petitioner's overall contention is that, in view of Weinstein's alleged disqualification, respondent's appointment of Weinstein is a nullity and hence is equivalent to a "default" on the part of respondent within the meaning of sections 4 and 5 of the United States Arbitration Act. Consequently, petitioner concludes, the Court should appoint an arbitrator in order that the arbitration may proceed.

I find petitioner's objections to be wholly without merit.

### I

■ The only geographical requirement imposed by clause 3 is that the arbitration shall take place in the City of New York. There is no requirement that the arbitrators must reside in or be doing business in the City of New York.

### II

■ In the absence of an explicit provision in the arbitration agreement, there is no requirement that only experts shall be appointed as arbitrators. Arbitrators who themselves do not possess expertise or technical knowledge can readily obtain the necessary evidence or information by requiring experts to appear before them. Had the parties intended to have the arbitration carried out by technicians or by persons having specialized experience in the particular field, they could have easily prescribed such qualifications.

### III

■ The objection based upon bias and partiality is devoid of merit. The Court's attention has not been called to any authority deciding that the parties must appoint only completely disinterested arbitrators where the arbitration agreement provides that each party shall select one arbitrator and the arbitrators thus selected by the parties shall, in turn, select a third arbitrator.

■ One of the major purposes of arbitration is to expedite the disposition of commercial disputes without the restrictive conditions characteristic of judicial proceedings. To allow one party to challenge the qualifications of the arbitrator designated by the other party at the outset or in the course of the pro-

ceedings, under the type of arbitration clause here involved, would tend to defeat the very purpose of such arbitration agreement. It has been observed

"The submission of disputed matters to arbitration will not be encouraged, as it should be, if, during the proceedings and before an award, either party can come into court in a summary proceeding not sanctioned by statute and challenge the qualifications of an arbitrator." Dewart v. Northeastern Gas Transmission Co., Sup.Ct.Errors 1953, 140 Conn. 446, 450, 101 A.2d 299, 301.

■ Moreover, the designation by the parties themselves of arbitrators who may not be completely disinterested, accords with the generally accepted practice in arbitration proceedings of this type. In such case, it is quite frankly recognized that the "neutral" arbitrator is the one selected by the parties' arbitrators.

If the parties had intended to assure the impartiality of all three arbitrators, they could have readily provided, for example, that disputes should be arbitrated before a board or committee of a named trade association, e. g., Marine Transit Corp. v. Dreyfus, 1932, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282, affirming The Gerald A. Fagan, 2 Cir., 1931, 49 F.2d 215, or before an arbitrator or arbitrators selected from a panel of the American Arbitration Association.[1]

---

1. The Code of Ethics and Procedural Standards for Labor-Management Arbitration (prepared by the American Arbitration Association and the National Academy of Arbitrators and approved for arbitrations by the Federal Mediation and Conciliation Service) "is not applicable to commercial arbitrations." However, it is highly significant that Part I, subdivision 2, dealing with the subject of bias, provides:

"It is recognized, however, that the parties frequently expect their appointees to serve also as representatives of their respective points of view. In such cases, *the rules of ethics in this Code, insofar as they relate to the obligations of strict impartiality, are to be taken as applying only to the third or neutral arbitrator.*" (Emphasis supplied.)

The Commercial Arbitration Rules of the American Arbitration Association (as amended and in effect September 1, 1954), Section 11, provides:

"No person shall serve as an Arbitrator in any arbitration *if he has any financial or personal interest in the result of the arbitration,* unless the parties, in writing, waive such disqualification." (Emphasis supplied.)

Section 18 of the Commercial Arbitration Rules, entitled "Disclosure by Arbitrator of Disqualification," provides:

"At the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator. Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall, in writing, so advise the Tribunal Clerk. If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with the applicable provisions of this Rule."

Commenting on the foregoing rule. Kellor, American Arbitration (1st ed. 1948) 236–237, states:

"The amount of interest which will create a disqualification does not admit of any precise definition; but any circumstances indicating an evident bias in favor of either party will be open to suspicion. *It is for the parties to decide* whether the circumstance, thus disclosed, is such as to invite withdrawal by the Arbitrator.

"Arbitration laws consider impartiality so important that they quite universally provide that, upon proof of bias, the award shall be set aside. Rules attach so much importance to it that they establish qualifications and contain provisions for vacating the office when bias is proved. But, finally, and ultimately, *the responsibility rests squarely upon the parties:* if they wish to appoint impartial Arbitrators they may do so, for the parties make their own choice.
\* \* \* \* \*

"*The court, however, is not in a position to maintain this principle unless a party challenges the award on this ground and thereby incurs the risk of its invalidation.* Unless the Rules governing the proceeding provide for an earlier correction, arbitrations will continue with biased arbitrators and annulled awards." (Emphasis supplied.)

The cases cited by petitioner are readily distinguishable. They involve situations where there was only one arbitrator, or where the arbitrator was required by the terms of the arbitration agreement to be neutral, or where the arbitrator was court-appointed.

Under the Federal Arbitration Act, the Court's power to deal with bias is limited to setting aside the award *after* it has been rendered. 9 U.S.C.A. §§ 10–12. See San Carlo Opera Co. v. Conley, D.C.S.D.N.Y.1946, 72 F.Supp. 825, 832, affirmed 2 Cir., 1947, 163 F.2d 310; Albatross S. S. Co. v. Manning Bros., D.C. S.D.N.Y.1951, 95 F.Supp. 459, 462.

Motion denied.