Commonwealth *v.* Pavkovich, Appellant.

Argued May 25, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused November 26, 1971.

*Edward W. Goebel, Jr.,* with him *T. Warren Jones,* and *MacDonald, Illig, Jones & Britton,* for appellant.

*Robert H. Chase,* Assistant District Attorney, with him *Michael M. Palmisano,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 12, 1971:

In 1963, appellant was found guilty, after a jury trial, of murder in the first degree. The jury fixed the sentence at life imprisonment, and that sentence was imposed. Thereafter, petitioner filed post-trial motions for a new trial and in arrest of judgment. After argument, these motions were denied, and the life sentence imposed at the conclusion of the trial was reimposed. No appeal from the judgment of sentence was prosecuted.

Appellant subsequently filed a petition under the Post Conviction Hearing Act, in which he alleged, *inter alia,* that he had not knowingly and voluntarily waived his right of appeal from the judgment of sentence. An evidentiary hearing was held, and the post-conviction court found that appellant's decision to forego an appeal was, at least in part, based upon advice given to him by his trial counsel that if, on appeal, he were successful in winning a new trial, he would face the possibility of a death penalty after a retrial and conviction of first-degree murder. In view of this Court's decision in *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969) the post-conviction court granted petitioner leave to file post-trial motions nunc pro tunc. Such motions were filed and again denied, and the matter is now before us on direct appeal from the judgment of sentence.

Appellant first argues that he was prejudiced by the inclusion in the court en banc, which decided the post-trial motions filed subsequent to his post-conviction hearing, of a judge who had been the prosecuting attorney at his trial. The inclusion of that judge in the court en banc was error. A person who acted as counsel in a criminal case, on either the side of the prosecution or the defense, should not later participate in the matter as a judge. *Com. ex rel. Allen v. Rundle,* 410 Pa. 599, 189 A. 2d 261 (1963). In the instant case, however, we perceive no possible prejudice to appellant in what occurred, and the error was harmless. First of all, no objection to the inclusion of the judge in question was ever raised prior to the appeal to this court. Secondly, post-trial motions had already been filed and disposed of in this case immediately subsequent to trial, and the post-conviction court properly should have permitted the filing of an appeal from the judgment of sentence rather than allowing the filing of

new post-trial motions, that stage of the appellate process having already been completed. Finally, the post-trial motions presented subsequent to the post-conviction hearing were, with one exception to be discussed later, the same as those previously presented. The second court en banc simply denied those post-trial motions "on the basis of the opinion of the court en banc for this County dated June 20, 1963."

Appellant next complains that the totality of the circumstances surrounding his arrest and interrogation forbade the introduction at his trial of statements given by him to the police. This contention was not made in appellant's first post-trial motions, and since the post-conviction court was not required to allow the filing of a second set of post-trial motions, this issue could be disposed of summarily as not being timely raised. We have, nevertheless, considered the issue, and find it to be without merit. Initially, we observe that the statements introduced at appellant's trial were introduced without objection and that appellant, while testifying on his own behalf, testified to the same material contained in the statements given to the police, as well he might, since his statements, as well as his testimony, were designed to exculpate himself from criminal responsibility on the theory that the murder of which he was accused was in actuality an accidental homicide. Finally, a review of the record fails to reveal any basis for a finding that the statements given were involuntary.

Appellant next contends that the trial court erred in giving additional charge to the jury in response to a question asked by the jury during its deliberations. The jury, in effect, asked the trial judge whether, if it could not agree on the degree of guilt, it could compromise on the lesser degree. The answer given by the trial judge was correct. The trial judge instructed

the jury: "I don't want to tell you what to do, Members of the Jury, on that. You should use your conscience on that and consider the evidence and our instructions as to what these degrees are. I am not saying that you are going to eliminate the question of accident, but assuming from your problem you are going to ignore the question of accident and say that there was an unlawful killing of some kind, then I would suggest that you might do it this way—although it is not binding on you—you might consider voluntary manslaughter." The court then reviewed the law with respect to voluntary manslaughter and at that time made the statement complained of, that he knew of nothing in the evidence which would support a conclusion of voluntary manslaughter. Immediately thereafter the court charged: "Again, I do not impose my thinking on that subject. It is entirely up to you. . . . If you do come to that conclusion that there was [the elements necessary to support a verdict of voluntary manslaughter], you would find a verdict of voluntary manslaughter. But if there wasn't, then you might go to consider the next item, which is second-degree murder." The court then outlined the elements necessary for a verdict of second-degree murder, and this was followed by an outline of the elements required for a first-degree murder verdict. Appellant complains that the effect of this additional charge was to forbid the jury finding a verdict of voluntary manslaughter.

We disagree. It is clear from the charge given that the court left the matter to the discretion of the jury, and there was no error in his informing the jury that the evidence as viewed by him would not support such a verdict. In *Commonwealth v. Yeager*, 329 Pa. 81, 85, 196 A. 827 (1938), we said: ". . . [W]here there is no evidence which in the remotest degree points to the offense of manslaughter, the court commits no error

in instructing the jury that a verdict of guilty of manslaughter would not be warranted."

That language was quoted with approval in *Commonwealth v. Heckathorn*, 429 Pa. 534, 541, 241 A. 2d 97 (1968). See also *Commonwealth v. Dews*, 429 Pa. 555, 239 A. 2d 382 (1968). Our reading of the trial record indicates to us that the trial judge was correct in his assessment of the evidence, and since he clearly allowed the jury the option of finding voluntary manslaughter, if it so desired, his indication of his view of the evidence was not error.

Finally, appellant complains that the evidence was insufficient to support a verdict of first-degree murder, in that the Commonwealth had not proved a specific intent to kill. The evidence in the case is more than sufficient to support a first-degree murder verdict. Appellant had been involved in an illicit affair with the decedent's wife, apparently, and understandably, much to the annoyance of the decedent. The friendship which had previously existed between appellant and the decedent came to a somewhat abrupt end, and the parties from that time forward could hardly be considered to be on friendly terms with each other. Appellant telephoned the decedent on several occasions, attempting to arrange a meeting, the purpose of which is not clear. A meeting was finally arranged at a tavern, and appellant went to the tavern armed with a pistol concealed under his coat. He sat on a bar stool next to the decedent, and indicated to the decedent that he, appellant, understood that the decedent was out to get him. Without further ado, appellant pulled out the pistol, which had been concealed in his clothing, and shot the decedent in the back of the head, inflicting a mortal wound. Other patrons of the tavern testified that although they had heard no conversations between appellant and the decedent, they were, of course, aware

of the fact that appellant had shot the decedent. They further testified that subsequent to the shooting, appellant told them that he had already killed one man and might kill another if they did not stay away. He then placed the pistol on the bar, and from that point on was concededly most cooperative. His testimony was that he simply wished to show the pistol to the decedent so that the decedent would be aware of the fact that appellant was armed. When he had the pistol in his hand, he contends, he became dizzy and the pistol accidentally discharged. The jury, as was its prerogative, did not accept appellant's version of the occurrence. The Commonwealth produced evidence to the effect that if the pistol had been cocked, it would require three pounds of pressure to fire it, and if it were not cocked, that eleven pounds of pressure would be required to fire it. Such evidence, combined with the other evidence in the case, might well have persuaded the jury that the shot was intentionally, not accidentally, fired. It is hornbook law that the use of a deadly weapon on a vital part of the body gives rise to an inference of an intention to kill. The evidence in this case clearly supports a verdict of guilty of murder in the first degree.

Judgment of sentence affirmed.

Mr. Justice JONES dissents.