Bole, Appellant, *v*. Nationwide Insurance Company.

Argued April 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Louis Kwall,* with him *Lebovitz, Lebovitz & Kwall,* for appellant.

*Charles J. Duffy, Jr.,* with him *James E. Coyne,* and *Lancaster, Mentzer, Coyne and Duffy,* for appellee.

OPINION BY SPAETH, J., December 22, 1975:

Appellant was severely injured when an automobile in which he was a passenger was involved in an accident with another automobile in November, 1970. When his

recovery by way of settlement with the insurance carrier of the other automobile's driver proved inadequate, appellant made a claim against appellee under the uninsured motorist coverage provisions of an insurance policy that appellant had purchased from appellee. The parties submitted the claim to common law arbitration pursuant to a clause in the policy that provided that each party should select a "competent and disinterested arbitrator," and that the two arbitrators so selected should select a third. When appellee selected Carl W. Brueck, Jr., Esquire, appellant objected, since Brueck had provided legal representation to appellee in the past. Brueck, however, refused to disqualify himself.

The arbitrators found against appellant and in favor of appellee; the arbitrator whom appellant had selected dissented. On appeal, the Court of Common Pleas of Allegheny County confirmed the award. This appeal ensued.

A majority of the court agree that remand is required. There is substantial disagreement, however, as to the scope of the remand. Judge VAN DER VOORT, joined by the President Judge, would apply a *per se* rule disqualifying an arbitrator who has in the past represented one of the parties to the arbitration, without regard to whether the arbitrator is actually biased in that party's favor. They would therefore remand with directions that a new panel of arbitrators be selected, and another hearing be held. Judge PRICE, joined by Judge JACOBS, is of the view that arbitrators selected by the parties need not be neutral. They would therefore affirm the lower court's order confirming the award. Judge HOFFMAN and Judge CERCONE have joined me in a middle position. I cannot join Judge PRICE, and Judge JACOBS, in what seems to me a limited view of our responsibility to ensure fairness; nor can I agree with them that the arbitration here was "bargained for." I do, however, agree with them that the record does not disclose actual bias. Therefore, while I concur with Judge VAN DER VOORT, and the President

Judge, that relief should be granted, I would grant less relief, and therefore would order a more limited remand, than they would.

I

The difficulty in this case arises from a paradox inherent in the process of arbitration. Arbitration is "a system designed to provide an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars." *Allstate Ins. Co. v. Fioravanti,* 451 Pa. 108, 116, 299 A.2d 585, 589 (1973). Consequently, judicial review of a common law arbitration award is severely circumscribed:

> "... appellant, to succeed, must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable, or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either." *Allstate Insurance Co. v. Fioravanti, supra* at 114, 299 A.2d at 588.[1]

The paradox is that this very circumscription, or insulation from judicial supervision, requires the courts to be particularly vigilant to ensure that the arbitration is impartial. As Mr. Justice BLACK has explained: "... we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 149 (1968).[2]

---

1. Where the arbitration is statutory rather than at common law, the grounds for vacating the arbitration award are statutorily prescribed. Act of 1927, April 25, P.L. 381, No. 248, §10, 5 P.S. §170.

2. In *Commonwealth Coatings Corp.,* Section 10 of the United States Arbitration Act, 9 U.S.C. §10 (1970), prescribed the grounds

From this responsibility it follows, as Judge (later Chief Judge) FULD of the Court of Appeals of New York has stated, that "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered." *Matter of Astoria Medical Group,* 11 N.Y. 2d 128, 132, 227 N.Y.S. 2d 401, 403, 182 N.E. 2d 85, 86 (1962). The present case in my judgment presents circumstances eminently justifying the exercise of this inherent power.

It is true, as Judge PRICE observes, that the arbitration arose from a contract, but this is no reason to stay our hand.

In the first place, the arbitration provision was consigned to the fine print of a standard automobile insurance policy purchased by appellant. The provision was not the result of negotiation between parties of equal bargaining power dealing at arms' length. It is therefore unrealistic to say that it was "bargained for." Indeed, where one of the parties is in a superior bargaining position, as is typically true of the relationship between insurance company and policyholder, I question whether such a fine print provision can be said to be part of the "contract." *See* Slawson, *Standard Form Contracts and Democratic Control of Lawmaking Power,* 84 Harv. L. Rev. 529 (1971).

In the second place, assuming *arguendo* that the parties did bargain for and agree to the arbitration provision, the provision requires each party to appoint "a competent and *distinterested* arbitrator." (Record at Exhibit B; emphasis added.) This language distinguishes the present case from those holding that prior association with one of the parties does not require disqualification of an arbitrator. *Petition of Dover Steamship Co.,* 143

---

on which an arbitration award could be vacated. These grounds are identical to those under the Pennsylvania statutory arbitration scheme. *See Block Pontiac, Inc. v. Candando,* 274 F. Supp. 1014, 1020 (E.D. Pa. 1967) *and* n.1 *supra.*

F. Supp. 738 (S.D.N.Y. 1956) ; *Matter of Astoria Medical Group, supra.* In *Dover Steamship Co.,* the parties submitted to arbitration pursuant to a provision of a voyage charter party that did not require the appointed arbitrators to be "disinterested." 143 F. Supp. at 740. In *Astoria Medical Group,* Judge FULD specifically noted that "the provision relating to arbitration contains no word of limitation on the identity, status or qualifications of the arbitrators ; *had the parties intended that their appointees be completely impartial or disinterested, they could have readily so provided.*" 11 N. Y. 2d at 135, 227 N.Y.S. 2d at 406, 182 N.E. 2d at 88 (emphasis added.) Here, the insurance policy did so provide. It is therefore our responsibility to enforce the provision.

## II

It does not follow from the foregoing, however, that we must disqualify the arbitrator and remand for a new appointment and arbitration. Instead, what we should do, in my judgment, is to prescribe a procedure by which the parties may obtain a judicial ruling upon the arbitrator's alleged partiality.

Section 18 of the Rules of the American Arbitration Association provides an appropriate point of departure:

"Disclosure by Arbitrator of Disqualification—At the time of receiving his notice of appointment, the prospective arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator ..."

*See Keystone Insurance Co. Appeal,* 224 Pa. Superior Ct. 404, 406, 307 A.2d 55, 56 (1973). Once disclosure is made, a party may, of course, agree to have the arbitrator participate in the decision of the case. If the party objects, however, and the arbitrator, as here, nevertheless refuses to disqualify himself, I would hold that the party may seek a rule to show cause from a court of common pleas.

The court should hold a hearing on the rule, and if the evidence shows actual bias on the part of the arbitrator, should order him disqualified and direct that a new arbitrator be appointed. *Cf., Sanko S.S. Co., Ltd. v. Cook Industries, Inc.,* 495 F.2d 1260, 1263 (2d Cir. 1973).

In suggesting this procedure, I realize that I differ with Judge VAN DER VOORT'S opinion to the extent that it would hold that prior representation of one of the parties, without more, requires an arbitrator's disqualification. However, requiring a showing of actual bias rather than imposing a *per se* rule of disqualification will, I suggest, promote the goal of an impartial arbitration while at the same time recognizing that less stringent rules should apply to the review of an arbitration award than to the review of a decision by a court.

On the record here, I cannot determine whether arbitrator Brueck was actually biased in favor of appellee. Appellant's July 16, 1974 "Petition and Rule to Vacate the Award of Arbitrators" merely states, in paragraph 9, that arbitrator Brueck had been asked to disqualify himself on the ground that "he represents Nationwide Insurance Company [appellee] in various matters of litigation." However, the record does not reveal what these matters were, nor when or how often or how regularly they arose, nor what the extent of Brueck's representation was. The lower court's opinion only states that Brueck had acted as Nationwide's counsel in "various unrelated matters." (Lower court opinion at 3).

Therefore, although I agree that remand is required, I would not direct the lower court to order a new appointment and arbitration. I would remand for a hearing on arbitrator Brueck's actual bias *vel non*. If after hearing the lower court determines that Brueck was not biased, the arbitration award should not be disturbed. Only if the lower court finds actual bias should it vacate the award and order a new appointment and arbitration.

HOFFMAN and CERCONE, JJ., join in this opinion.

Concurring and Dissenting Opinion by Van der Voort, J.:

The appellant appeals to this Court from an Order of the lower court denying him relief from a decision of a board of arbitrators. The case arose from a dispute between appellant and his insurance carrier, appellee, following appellant's invocation of the uninsured motorist claim in his policy. Because the appellant, acting on his own account, made a prior settlement with the involved tortfeasor's insurance carrier, and because his policy prohibited his retaining monies from such a settlement, appellee denied the appellant's claim and invoked arbitration, pursuant to the terms of the policy.[1] Charles Lehman, Esq., was appellant's selected arbitrator; Carl W. Brueck, Jr., Esq., appellee's; and Gilbert S. Solomon, Esq., was the arbitrator mutually-selected. The Board found as follows:

"And now, to-wit, this 12th day of July, 1974, the above matter was heard by a Board of three arbitrators named below. The Board heard testimony and reviewed the applicable law, and after careful review and due deliberation, makes the following award: The Board finds for the respondent, Nationwide Insurance Company. Arbitrator Charles Lehman, Esq., dissent (sic) from the finding of the majority. . . .

"The finding of the Board is based on *Press v. Md. Cas. Co.*, 227 Pa. Super. 537 (1974).

/s/ Carl W. Brueck, Jr.
/s/ Gilbert S. Solomon
/s/ Charles Lehman"

---

1. "9. *Trust Agreement.* In the event of payment to any person under this endorsement:

(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; . . ."

Appellant appealed this award to the Court of Common Pleas, which, by Order of September 12, 1974, confirmed the award as entered. It is from the Order that this appeal is taken.

The question here presented, which was raised properly prior to and at the Arbitration hearing, is whether arbitrator Brueck should have excused himself from the hearing of the case due to his past representation of the appellee, by whom he had been employed. There is no doubt that this case was brought under the precepts obtaining to common law arbitration. As such, the arbitrators are the final judges of law and fact. *Reading Tube Corp. v. Steel Workers Federation,* 173 Pa. Superior Ct. 274, 98 A.2d 472 (1953). *Press v. Maryland Casualty Co.,* 227 Pa. Superior Ct. 537, 539, 324 A.2d 403, 404 (1974), refers to the "rule that in a common law arbitration the decision of the arbitrators is binding and cannot be attacked unless it can be shown by clear, precise, and indubitable evidence that a party was denied a hearing, or that there was fraud, misconduct, or other irregularity that cause the rendition of an unjust, inequitable, or unconscionable award." The irregularity therein referenced goes to the process employed in reaching the decision. See also *Hostetter v. Pittsburgh,* 107 Pa. 419 (1884). It cannot be "presumed that the parties intended or agreed to be bound by anything short of an honest exercise of the judgment of the arbitrators upon the questions submitted." *Speer v. Bidwell,* 44 Pa. 23, 26 (1862).

Thus we must consider whether arbitrator Brueck's prior employment by appellee discomfitted him in serving as arbitrator. The rule is of ancient origin that a judge should disqualify himself when he has served once as counsel for one of the parties. *Kolb's Case,* 4 Watts 154 (1835). In *Commonwealth v. Pavkovich,* 444 Pa. 530, 283 A.2d 295 (1971), it was determined to be error, albeit harmless because no objection on point was raised,

for a judge to sit on a case wherein he had been the prosecuting attorney at an earlier stage. See also *Commonwealth v. Small*, 81 Pa. Superior Ct. 600 (1923), for the proposition that a judge who was prior counsel to a party is not unfit to decide the case when his familiarity was on matters dehors the record. The court in *City of Erie v. F.O.P.*, 57 D. & C. 2d 779 (1971) very reasonably pointed out that a party-designated arbitrator cannot be neutral in the sense that a judge must be, concluding that such an arbitrator may be partisan but not dishonest. With this latter view I am not in agreement.

Because they are the final decision-makers on the law and facts of the case, whose decision is final absent fraud or misconduct, arbitrators under common law stand as judges. Their function is judicial, and their conduct must be robed in judicial impartiality. Without reflecting in any degree upon his honesty or integrity[2] and without deciding to what degree Arbitrator Brueck may or may not be partisan, I would hold that his prior professional representation of appellee cast a cloud upon his impartiality. Arbitration is an important function in the law wherein decisions are cloaked with finality. While it is not reasonable to expect to find three arbitrators with no innate or acquired sympathies as to certain cases, it is right to ask, at the least, that each be impartial to the extent of never having been in the employ of any of the litigants. To have a lesser standard would be dishonest to the expectation held by the parties and the needs of justice that a decision will be rendered by disinterested triers of fact and law. I think Arbitrator Brueck should have disqualified himself in the face of appellant's objections to his sitting.

The majority of our Court remands this case to the lower court for a hearing and a determination by it as to

2. Arbitrator Brueck is a highly esteemed member of the bar. He has just been elected president of the Allegheny County Bar Association.

whether or not Arbitrator Brueck was "actually biased."
Just what standard shall be used to determine "actual
bias" is not suggested. It seems to me that such a pro-
cedure is far too indefinite. I think the rule should be more
precise, viz., that when an arbitrator has represented
one of the parties and he is challenged by another party
because of such representation he is disqualified. The
challenging party should not have to prove bias.

I would remand to the lower court with directions
to require reappointment, under the insurance contract,
of a Board of Arbitration, whose function at a re-hearing
of this case would be as the decider of such questions of
law and fact as are presented to it.

WATKINS, P.J., joins in this concurring and dissent-
ing opinion.

———

DISSENTING OPINION BY PRICE, J.:

In dissenting it seems to me important to note the
importance of this decision as it may govern future
common law arbitration and the traditional and typical
tripartite arbitration clause most often encountered
therein. As I read the majority opinion it is held, as a
matter of law, that an attorney for one of the parties to
an arbitration is disqualified from acting as an arbi-
trator; that bias and prejudice must be presumed and
implied; and that any showing of actual bias or preju-
dice is immaterial and unnecessary. The majority basi-
cally relies, I presume, on the reasoning that an attorney
is the agent of his client and bound to act for him and
that it is against public policy to permit anyone to act
as an arbitrator who might be under a temptation or
any tendency to favor the party appointing him. Such
reasoning, of course, is of ancient origin for in the
Maxims of Publilius Syrus, 42 B.C., it is said, "No one
should be judge of his own cause."

If this case involved a judge, master or umpire I
would agree; however, that is not the case before us.

Arbitrator Brueck was one of three appointed to resolve this dispute according to the terms of the contract between the parties. He was designated as such by the appellee. There is apparently no dispute in the fact that Mr. Brueck had been employed in the past to represent the interests of appellee in other unrelated litigation. There is agreement that this case is governed by the law pertaining to common law arbitration. As observed by the lower court, that rule of law has been settled in this Commonwealth for so long that it can be safely sublimated to the status of those rules not needing citation, and as such it is correctly stated by the majority.

The sole issue presented for our decision is whether an attorney, in private practice, is disqualified as a matter of law under a typical tripartite common law arbitration by reason of past representation of the party making his appointment.

I can find no case directly on point in this Commonwealth. However, in *Goodrich v. Hulbert*, 123 Mass. 190, 192, 193, 23 A.R. 60 (1877) it was held by the courts of our sister Commonwealth: "To hold, as a matter of law, that a member of the bar is disqualified to act as an arbitrator, merely because he has formerly been of counsel for one of the parties, would be an imputation upon the uprightness and good faith of the profession."

In *Riccomini v. Pierucci*, 54 Cal. App. 606, 608, 202 P. 344, 345 (1921), the court stated: "It is a well settled rule that, to justify setting aside a general award of arbitrators, there must be partiality or corruption upon their part. The relation of attorney and client is not such that it is conclusive evidence of partiality when the client acts as arbitrator in a matter in which his attorney happens to appear as counsel for one of the parties."

In *First National Bank in Cedar Falls v. Clay*, 231 Iowa 703, 716, 2 N.W. 2d 85, 92 (1942), this pertinent observation is made: "Choosing arbitrators wholly disinterested is an admirable standard to aspire to, but the

150

parties seldom do that, and if all awards were set aside in which it was not done, few awards will stand."

Arbitration under common law is a favorite of the law and is a creature of contract. In such a contract the parties are free to chart the selection of a private tribunal for the resolution of their disputes. The contract now before us does not spell out a disqualification, nor should one be inferred as a matter of law. Our role in such a case should be limited, as it has been historically, to an enforcement of the terms of the contract.

This contract simply requires each party to name its own arbitrator, and such party-designated arbitrators must agree upon a third party arbitrator, who, it is presumed, will be the neutral arbitrator. Such a contract has been widely used in both labor and commercial arbitration. There have been many observations and writings on such contracts and throughout these it is at once obvious that there is a common acceptance that the party-designated arbitrators are not, and cannot be "neutral" in the same meaning as a judge, master, umpire or third arbitrator must be.[1] And indeed I accept the majority's rationale as it may pertain to a third arbitrator, judge, master or umpire. I do not believe, however, that it should be applied to a party-designated arbitrator.

It seems that this conclusion is inescapable and is indeed the very reason parties do, in fact, agree to such a method to settle their disputes. Each party is thus assured of a choice of one arbitrator who will make sure that the point of view of the appointing party is represented on the decision making panel. As such it is a valuable right that is not to be lightly disregarded in the inter-

1. E. Elkouri & F. Elkouri, How Arbitration Works 48, 53, 61 (Rev. ed., 1960). See also Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration? 5 Arb. J. (n. s.) 276, 279 (1950); Phillips, A Lawyer's Approach to Commercial Arbitration, 44 Yale L.J. 31, 47-48 (1935); Taylor, The Arbitration of Labor Disputes, 1 Arb. J. (n. s.) 409, 413 (1946).

pretation of the contract. It is only in that interpretation that I find any meaningful purpose to the three party arbitration here involved. Were it otherwise and the party-designated arbitrators limited solely and strictly to the classification of "neutral" then the contract right is meaningless. So, then, I would conclude that appellee bargained for the right, if it so desired, to make a choice of one believed to be sympathetic to its position or favorably disposed to it. Appellant has that same right. It would seem from an examination of the authorities in this field that this right is available to both parties and that in the vast majority, if not all, of the cases both parties avail themselves of this right.

Public policy does not condemn or forbid this practice. Indeed it would seem, to the contrary, that the practice should be encouraged for such a practice would insure more learned and exact decisions from such panels. Party-designated arbitrators would and should bring to the panel a wealth of specialized knowledge on the subject matter in dispute. In a sense they may be the experts expected to furnish guidance to the neutral member who, by the very reason of his neutrality, may not be in a position to appreciate the problems and the fine points of the subject.

The majority, by its strict adherence to the code of conduct expected of the judiciary, unnecessarily confines the process of arbitration and incorrectly, to my view, classifies the process as judicial. I am inclined to the view expressed by Dean Sturges, that such classification is based on nothing more than "remote resemblances" and is "not very meaningful." *See* Sturges, *Arbitration— What Is It?* 35 N.Y.U.L. Rev. 1031, 1045-1046 (1960).

In reaching the conclusion that a party-designated arbitrator need not be "neutral," I, in no manner, either directly or by implication, would vary the rule of law allowing an award to be set aside upon clear, precise and indubitable evidence that a party was denied a hear-

152

ing, or that there was fraud, misconduct, or other irregularity that caused the rendition of an unjust, inequitable or unconscionable award. However, this appeal does not present such a situation.

In brief, it is my view that the contract term herein before us allows and accepts the concept of "partisan" appointees, that such agreement is not contrary to law or public policy, and that neither party may object to the other's designation of someone associated with his interest or related to him.

I would affirm the award.

JACOBS, J., joins in this dissenting opinion.