## A. Arthur Kober Company, Inc. v. Brook Developers, Inc.

*Michael Egnal,* for plaintiff.
*Samuel Moonblatt,* for defendant.

TAKIFF, *J.*, May 14, 1976—

## I. SUMMARY OF PLEADINGS AND ISSUES RAISED

Brook Developers, Inc., A. Abner Rosen, and the Estate of Abner Rosenberg, Deceased, by its executors, filed this petition on December 6, 1974, seeking to set aside an award against them and in favor of A. Kober Company, Inc., rendered in common-law arbitration proceedings. On July 31, 1975, this court issued an opinion and order sustaining in part and overruling in part preliminary objections filed by Kober. Briefly restating the factual background as summarized in our opinion of July 31, 1975, Kober was a general contractor who, by various contracts, agreed to build for Brook (the owner) a Pathmark and a W. T. Grant Store, an Eric Theatre and various small stores. Kober sought arbitration before the AAA when Brook failed to pay certain sums in connection with construction of the Eric Theatre and the small stores. The contractor sought payment of $118,104.64, of which $42,006 was claimed to be the balance due for construction of the Eric Theatre and the balance for the construction of the small stores. One major reason Brook refused to make payment was that it believed Kober constructed the small stores' roof of faulty materials and the repair thereof cost $56,750. The arbitrators, after an initial hearing date of February 13, 1973, held six hearings during which evidence and arguments were presented by the parties. At the conclusion of the hearings, the arbitrators made an award dated October 29, 1974, of $158,664.49 to Kober, which apparently included an allowance of interest at a rate of ten percent, and professedly

awarded interest at a rate of ten percent from date of award to date of payment.

The order of July 31, 1975, sustained preliminary objections to the petition as to all matters except the allegations of paragraphs 1, 4 and 12(a). We have considered testimony offered at hearing as well as oral argument and briefs on the remaining averments in which petitioners allege that the award must be set aside because (a) the award of interest at ten percent rather than six percent was unlawful; (b) $42,006 was awarded contrary to the express provisions of the contract, the architect never having issued the required certificate of completion for the Eric Theatre; and (c) the entire proceedings and award were tainted by bias of the arbitrators.

## FINDINGS OF FACT

1. A. Kober Company, Inc. "contractor" is a general contractor which agreed to construct for Brook Developers, Inc. "owner," a shopping complex, including a Pathmark Store, a W. T. Grant Store, an Eric Theatre and various small stores. A. Abner Rosen and Abner Rosenberg were sureties on this agreement; Abner Rosenberg is now deceased and his estate is represented in this matter by its executors, Lillian Rosenberg, Jay Marc Schwamm and Irving H. Stoltz.

2. After completion of the structures, the contractor sought arbitration before the AAA on its claim against Brook Developers, Inc., and the sureties for sums allegedly due in connection with the construction of the Eric Theatre and the small stores.

3. Thomas J. Mangan, John Runzer, Esq., and

Edward C. Driscoll were appointed by the AAA to serve as arbitrators.

4. On the reverse side of the notice of appointment, pursuant to instructions on the face thereof, Mr. Mangan stated:

"Please Note:

"Thomas J. Mangan is socially acquainted with both Michael Egnal and Morton Berman."

5. It was the practice of the AAA to inform all interested parties of any disclosures made by arbitrators relating to possible partiality or bias.

6. Prior to the commencement of the first arbitration hearing on February 13, 1973, Mr. Mangan reiterated to all present the facts of his prior acquaintance with Mr. Berman, President of Kober Company, and Mr. Egnal, counsel for Brook Developers, Inc.

7. At no time prior to, or during the course of, the six hearings in arbitration of this matter was any objection made to Mr. Mangan's participation as an arbitrator.

8. The arbitrators awarded $158,664.49 to A. Kober Company, Inc., which amount included $42,006 for the Eric Theatre construction.

9. The architect's certificate of completion for the Eric Theatre, required on behalf of the tenant and owner by contract, was never furnished.

10. The architect informed the Kober Company by letter that the only reason he did not furnish said certificate was that he had been advised not to do so by the attorney who was counsel for the owner, the tenants and the sureties.

11. Neither the owner, sureties nor tenant ever demanded a certificate of completion from the architect.

12. The tenant, Samuel Shapiro, executed a

written acceptance of the building, commenced occupancy and paid rent to the owners.

13. The construction contract entered into by the parties on July 6, 1971, the so-called "Eric Contract," limited the owner's liability for cost of construction to $243,500.

14. For its performance in the construction of the Eric Theatre, the arbitrators awarded to the contractor the balance due on the total construction cost in the sum of $244,789.

15. The arbitrators awarded the excess of $1,289 to cover additional costs of completion incurred pursuant to two authorized change orders.

16. The $158,664.49 awarded by the arbitrators included interest at the rate of ten percent and directed that interest from the date of award to payment was also to be at ten percent.

## II. DISCUSSION

Paragraph 12(a) of the petition avers that, at the conclusion of the hearings, counsel for Brook and the sureties learned for the first time that John J. Runzer, one of the arbitrators, "had had prior legal matters with counsel for the claimant."

The depositions of claimant's counsel, Samuel Moonblatt, and John J. Runzer were taken before this court on February 19, 1976, for discovery purposes only and not as evidence for hearing on this petition. Neither Mr. Runzer nor Mr. Driscoll was produced as a witness on March 8 and 15, 1976, when this case was heard on the merits, without a jury. Any allegation of bias on the part of either of those arbitrators was withdrawn by petitioners who made their sole claim of bias against the remaining arbitrator, Thomas J. Mangan.

Our earlier opinion overruling preliminary ob-

jections stated that partiality of one or more of the arbitrators *may* be ground for setting aside an award. Section 18 of the Rules of the American Arbitration Association provides:

"Disclosure by Arbitrator of Disqualification — At the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator. Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall, in writing, so advise the Tribunal. If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with the applicable provisions of this Rule."

In the instant case, Arbitrator Thomas Mangan, an architect-engineer, was socially and professionally acquainted with both Mr. Berman of the Kober Company and Mr. Egnal, counsel for petitioner. When he was appointed by the AAA as an arbitrator in this matter, he explicitly disclosed these facts on the reverse side of the notice of appointment pursuant to the directions on the form, which state that "(t)he AAA will call the facts to the attention of the parties' counsel." Although there was no testimony to establish that the AAA, in fact, made such disclosure, AAA Tribunal Administrator Jeff Coble testified that this was the regular and normal practice and no contrary evidence was offered by petitioner. Mr. Mangan also testified that upon entering the room before the arbitration proceedings began and while the stenographer was setting up her machine, he stated to all present his acquaintance with both

Mr. Egnal and Mr. Berman. Mangan's description of this event was corroborated by two other witnesses. Petitioners offered no contrary testimony, but relied solely on the negative implication which they contended arose from the absence of any record of these remarks in the stenographer's notes. The undisputed evidence was that Mr. Mangan had known Mr. Egnal for 13 years before meeting Mr. Berman in 1968 and his relationship with both men was cordial. There was no objection to Mr. Mangan's participation by any party or attorney at any time, although the hearings stretched over a period of many months. Petitioners have failed to prove any bias on the part of Mr. Mangan; and they have failed to overcome the inference, which is most reasonable under the circumstances shown, that any objection was waived. If anything, the more reasonable inference is that counsel for petitioners, whose prior acquaintance with this arbitrator was not disputed, was well content to have the arbitrator serve in this matter.

We find that Mr. Mangan's acquaintance with Messrs. Berman and Egnal was not such as to import partiality to either petitioner or respondent. Disclosure was made in writing to the AAA and orally to the parties and their attorneys before the proceedings began. Judge Spaeth's recent opinion in Bole v. Nationwide Insurance, 238 Pa. Superior Ct. 138, 352 A.2d 472 (1975), reiterates the established principle that after disclosure, a party may waive his right to object to the arbitrator on grounds of partiality. He further states that if a party makes objection, the court should disqualify the arbitrator "if the evidence shows *actual bias* on the part of the arbitrator." Id. at 144 (emphasis supplied). By no standard can the evidence pre-

sented here be held to show actual bias, or any irregularity which would invalidate the proceedings or the award which resulted.

Turning to the principal amount of the award, petitioners contest the inclusion of the balance due on the Eric Theatre, because the contractual requirement of an architect's certification of completion was never complied with. This issue was submitted for the arbitrators' consideration and resolved in favor of the Kober Company. We overruled Kober's preliminary objections to our consideration of this issue, recognizing that, to the general rule that an award in common-law arbitration will not be disturbed for a mistake of fact or law, there is an exception if the award "imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to give content to the phrase 'other irregularity' . . ." Allstate Insurance Co. v. Fioravanti, 451 Pa. 108, 299 A.2d 585 (1973). Whether the inclusion of the $42,006 due on the Eric Theatre was correct or erroneous by reason of the nondelivery of the architect's certificate is a matter which is beyond our power to determine; an honest error will not cause an award to be disturbed. Petitioners' burden is to show that the arbitrators' disregard of the law was so clear and palpable as to be an irregularity in the nature of, or comparable to, fraud, misconduct or corruption: Harwitz v. Selas Corp. of America, 406 Pa. 539, 178 A.2d 617 (1962). The contract upon which petitioners rely provides in an addendum as follows:

"It is understood that the architect for Sameric Theatre, Mr. Louis Colarocco A.I.A. will on behalf of Sameric Theatre and Brook Developers, Inc. accomplish the following:

". . .

"2. Certify the building is complete."

Thus, it is clear that the architect was to act on behalf of the tenant (Sameric) and the owner (Brook). Possession by the tenant is undisputed; the owner in writing accepted the building as being in accord with his architects' requirements. The arbitrators may well have concluded that, by this conduct, Sameric and Brook waived the provisions for architect's formal certification and that such approval by the principals dispensed with the contractual requirement of approval by their agent, the architect. The arbitrators' determinations of fact and law on this issue were not so blatantly contrary to law as to import irregularity in the proceedings and award.

We reach the same conclusion with respect to the arbitrators' award of $244,789 on the "Eric Contract," which exceeded the $243,500 contractual limitation of the owner's liability. The evidence suggests that the excess $1,289 was awarded to compensate the contractor for costs incurred pursuant to two authorized change orders. This award does not suggest such impropriety as to mandate judicial intervention.

In oral argument and in his brief, counsel for petitioners sought to resurrect the allegations which were stricken from the petition by our order of July 31, 1975. Because this matter was tried without a jury, we liberally allowed petitioners to present evidence which related to those averments based upon counsel's representation that this evidence was also relevant to the proof of other allegations properly before the court. Petitioners apparently now hope to use that evidence to re-open the issues which were removed from the case by

our July 31, 1975, order. For the reasons stated in our opinion of July 31st, those issues are not proper subjects for our present consideration.

Remaining for consideration is the dispute as to the legality of the interest awarded.

One of the arbitrators, John Runzer, testified that interest was calculated in three increments, at the rate of ten percent; ten percent interest was expressly granted on the total amount from the date of award to payment. Pennsylvania law unequivocally sets the legal rate of interest at six percent in an action for money due which has improperly been withheld: Barium Steel Corp. v. Wiley, 379 Pa. 38, 108 A.2d 336 (1954); Formigli Corp. v. Fox, 348 F. Supp. 629 (E.D. Pa. 1972). The award of interest at ten percent is such an indisputable irregularity as to require amendment by this court.

## CONCLUSIONS OF LAW

1. The disclosure by Mr. Mangan of his prior social and professional contacts with both the president of the complainant and the attorney for defendants, without objection by any party, was adequate to establish waiver of any complaint of partiality or bias asserted by any party following the rendition of the award.

2. To succeed in an appeal from common-law arbitration, "appellant . . . must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable and unconscionable award, the arbitrator being the final judge of both law and fact, the award not being subject to disturbance for mistake of either."

Harwitz v. Selas Corp. of America, 406 Pa. 539, 542 (1962).

3. The contractor's failure to obtain the architect's certificate of completion for the Eric Theatre is not such clear and palpable error as to require judicial reversal of the award of $42,006 in connection therewith, where the evidence before the arbitrators established that (1) the tenant and owner, for whose protection the certificate was required, respectively occupied and received revenue from the building; (2) the tenant executed a written acceptance of the building; and (3) the architect's refusal to provide the certificate was based solely on the advice of the attorney for the tenant, owner and surety.

4. The arbitrators' award of the cost of two authorized change orders, above the limit of cost agreed to in the original contract where changes of construction were authorized in writing by the owner, is not such clear and palpable error as to mandate judicial reversal.

5. Pennsylvania law unequivocally established that in an action for payment of money due which has been withheld, interest shall be awarded at the rate of six percent annually. The award of interest at ten percent being a clear error of law, properly characterized as misconduct, the award must be recomputed at the legal rate.

## ORDER

And now, May 14, 1976, upon consideration of the petition to set aside arbitrators' award, it is hereby ordered and decreed that the award made in the above-entitled case, No. 14-10-0078-72-C, is hereby confirmed; provided, however, that the interest portion of the award, computed at the rate

of ten percent per annum by the arbitrators shall be recomputed at the rate of six percent per annum. A recomputation shall be submitted to the court and, if approved, shall be confirmed as a supplement to this order. The petition to set aside arbitrators' award is denied.

## MEMORANDUM OPINION SUR PETITION FOR RECONSIDERATION AND SUPPLEMENTARY ORDER

TAKIFF, *J.*, June 22, 1976—Defendants in this matter have submitted a petition for clarification and reconsideration of the opinion and order sur petition to set aside arbitrators' award which was issued by this court on May 14, 1976. Upon consideration of this most recent petition, we find that an error was made in the discussion portion of our opinion, which states that the "owner," in writing, accepted the building; petitioners are correct in pointing out that it was the tenant who made this written acceptance. This does not affect our finding that the conclusion of the arbitrators that the owner waived the requirement of the architect's certification of completion was not clearly in disregard of the law.

As the May 14th opinion sought to make clear, there is no basis in this case for judicial review of the arbitrators' determination regarding the relationship between the June 17, 1970 contract and the November 30, 1971 contract. Testimony tendered in the form of an offer of proof with respect to that issue, the condition of the roof and the certificate of final completion was the subject of a proper offer of proof, but was stricken as irrelevant and incompetent upon timely motion; these substantive

matters had been considered and disposed of by the arbitrators and by our earlier opinion.

Finding of fact no. 15 sets forth adequately the reasons for upholding the award of $1,289 above the contractual limitation of liability. Any claim, inter se, between the owner and the lessee is not presently before us.

Our earlier opinion sets forth the rationale for our conclusion that the arbitrators' award should not be overturned on the basis of the alleged bias of Thomas Mangan; petitioners' observations as to the testimony of the tribunal administrator have no substantial effect upon the necessary conclusion that no bias was proved.

Pursuant to our order of May 14, 1976, a recomputation has been submitted so that the arbitrators' award may be amended to eliminate interest in excess of that allowed under Pennsylvania law. The total principal with six percent interest from the respective dates of completion of the small stores and the Eric Theatre to the date of the arbitrators' award amounts to a sum of $136,690.32; this amount with six percent interest to May 14, 1976, results in a total of $148,760.05 and the award of the arbitrators is confirmed in that amount.

## ORDER

And now June 22, 1976, it is hereby ordered and decreed that page 8 of the opinion of the court in this matter filed May 14, 1976, is amended to read that the "tenant" rather than the "owner" in writing accepted the building as being in accord with the architects' requirements. Defendants' petition for clarification and reconsideration is dismissed.

In accordance with the recomputation submitted pursuant to the order of May 14, 1976, it is ordered and decreed that the award of the arbitrators is confirmed in the amount of $148,760.05 and the prothonotary is directed to enter judgment in that amount as of May 14, 1976, against all defendants.

Except as hereinabove modified and supplemented, the order of May 14, 1976, is hereby reconfirmed.

## SECOND SUPPLEMENTARY OPINION

TAKIFF, *J.*, July 7, 1976—Defendants in this matter have submitted a second petition for clarification and reconsideration of our opinion and order dated May 14, 1976; an earlier petition for clarification and reconsideration was the subject of our memorandum opinion of June 22, 1976. In this second petition, defendants again seek reconsideration of our May 14th opinion on the grounds that there has been no adjudication of the issue "as to whether the terms of the June 17, 1970 contract as wrought by the November 30, 1971 contract affected a change in its material terms; whether the November 30, 1971 contract was a novation of the June 17, 1970 contract and whether the November 30, 1971 contract was a separate and independent contract." This issue was raised in defendants' petition to set aside arbitrators' award and was stricken from the case, upon preliminary objections, by our opinion and order of July 31, 1975. Our opinion of May 14, 1976, expressly reiterated this conclusion, and the memorandum opinion of June 22, 1976, for a third time, attempted to definitively dispose of the matter:

"[A]s the May 14 Opinion sought to make clear, there is no basis in this case for judicial review of

the arbitrators' determination regarding the relationship between the June 17, 1970 contract and the November 30, 1971 contract."

Even if the issue were appropriately before us, there has been no competent evidence proffered or adduced which would warrant a conclusion that the November 30, 1971, contract effected any change in the responsibilities of the sureties under the June 17, 1970, contract.

The findings of this court have been stated and restated. Any question as to their propriety must be addressed to the appellate courts. To avoid any possibility of prejudice on the timeliness of any appellate review, we issue the following

### ORDER
And now July 7, 1976, it is hereby ordered and decreed that the opinions of May 14, and June 22, 1976, in this matter are confirmed; time to appeal to run from the date of this final order.